UNITED STATES of America, Plaintiff,

v.

MIRACLE RECREATION EQUIPMENT COMPANY, Defendant.

Civ. No. 86–334–B.

United States District Court,
S.D. Iowa, C.D.

Sept. 22, 1987.

---

David Levitt, Office of Consumer Litigation, Dept. Justice, Washington, D.C., Daniel Levinson, General Counsel, Consumer Product Safety Com'n, Washington, D.C., for plaintiff.

F. Richard Lyford, Des Moines, Iowa, Roger D. Stanton, Overland Park, Kan., for defendant.

## ORDER

R.E. LONGSTAFF, United States Magistrate.

These matters are now before the Court on the parties' cross-motions. On July 10, 1987, plaintiff, United States of America, filed a Motion for a Protective Order to cancel the depositions of David Schmeltzer, Terrence Scanlon, and Michael Gidding, which was resisted by defendant, Miracle Recreation Equipment Co., on July 28, 1987. On July 28, 1987, defendant filed a Motion to Compel Discovery of several documents and tape recordings which was resisted by plaintiff on August 13, 1987. On August 13, 1987, plaintiff filed a second Motion for a Protective Order to cancel the depositions of Robert Verhalen, Paul Rubin, James Bradley, and a witness or witnesses to be identified pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, which was resisted by defendant on August 26, 1987. Finally, plaintiff filed a Response to Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Compel Discovery on September 8, 1987, and defendant filed a Response to New Factual Material Submitted by Plaintiff in Opposition to Defendant's Motion to Compel Discovery on September 10, 1987. These matters are considered fully submitted on the record before the Court.

## I. BACKGROUND

Plaintiff, United States of America ("United States"), filed this lawsuit against the defendant, Miracle Recreation Equipment Company ("Miracle"), on the behalf of the Consumer Product Safety Commission ("Commission"). The suit alleges certain violations of the Consumer Product Safety Act ("Act") against Miracle in its production of playground equipment. As part of its complaint, the United States prays for $150,000.00 as the civil penalty authorized under the Act. The United States has not, however, specifically explained how it calculated this amount. Miracle, through its requests for discovery, endeavors to attain such an explanation. The dispute between the parties that is addressed by this order focuses on the discovery of materials and testimony relating to how the United States formulated the civil penalty it now seeks to impose upon Miracle.

In resisting Miracle's present discovery request, the United States points out that the amount of discovery already completed in this case is voluminous and that further discovery at this juncture would be cumulative and would only result in "annoyance, embarrassment, oppression, and undue burden and expense." Miracle disagrees and argues that there has not been "any discovery on what is one of the most important issues in this case, the amount of the civil penalty being sought by the plaintiff and the propriety of, and rationale for, such an amount."

So far, the United States has limited its disclosure on the penalty issue to, one, a document setting forth the resolution adopted in a closed Commission meeting on November 14, 1985 and, two, answers to five interrogatories. The information provided by these materials simply states that, in determining the penalty fee, the Commission considered the following statutorily mandated factors: 1) the nature of the

product defect; 2) the severity of the risk of injury; 3) the occurrence or absence of injury; 4) the number of defective products distributed; and 5) the appropriateness of the penalty in relation to the size of the business of the person charged. 15 U.S.C. sec. 2069(c). The discovery responses provided by the United States did not indicate the effect each individual factor had on the Commission's ultimate decision. Nor has the United States compared and contrasted the Commission's decision in the Miracle proceeding with prior proceedings in which the Commission has assessed penalty fees.

Miracle's request for discovery can be broken down generally into three categories of materials. First, it has filed notice for the depositions of seven Commission personnel: Terrence Scanlon, Chairman of the Consumer Product Safety Commission; David Schmeltzer, Associate Director of the Directorate for Compliance and Administrative Litigation; Michael Gidding, former staff attorney in the Commission's Office of Administrative Litigation; Robert Verhalen, Associate Executive Director of the Commission's Directorate for Epidemiology; Paul Rubin, Associate Executive Director of the Commission's Directorate for Economic Analysis; James Bradley, Director of the Division of Human Factors within the Directorate for Epidemiology; and a witness or witnesses to be designated pursuant to Rule 30(b)(6) knowledgeable in forecasting products remaining in use after recalls and after various time periods of use.

The United States seeks to cancel the Scanlon, Schmeltzer, and Gidding depositions on the grounds that these men have no personal knowledge of relevant information which either has not already been obtained or which can be obtained through other, less burdensome means. However, based on the deposition taken of David Thome, Director of the Commission's Corrective Actions Division, Miracle disputes that representation and contends that Terrence Scanlon has personal knowledge of how the Commission arrived at the amount of the penalty fee it seeks to enforce against Miracle. According to Thome and according to records released by the United

States, Scanlon attended and participated in the meeting at which the Commission determined the penalty fee. Miracle further contends, again citing the Thome deposition, that David Schmeltzer "has personal knowledge regarding the process by which the amount of the penalty to be sought from Miracle was to be determined, supervises discussions with outside parties about penalty fees and would be knowledgable about any documents comparing various penalty fee assessments." Defendant's Brief at 11. Miracle seeks Michael Gidding's deposition because he signed and verified the interrogatory answers submitted by the United States and identified himself as the custodian of documents at the time documents were produced in this case.

The United States also moves to cancel the Verhalen, Rubin, and Bradley depositions, as well as the deposition(s) of the unidentified witness(es) knowledgeable in forecasting products, on the ground that the information sought from these individuals is irrelevant to this case. In urging the necessity of these depositions, Miracle argues that inquiry into the Commission's decision-making process is essential to the preparation of their case.

In his deposition, Carl Blechschmidt, an engineer and former Director of the Commission's Office of Product Defect Identification, stated that Robert Verhalen directed investigations and studies of accidents and injuries arising from the use of playground equipment. Blechschmidt Dep. at 49–51, 97–99. Paul Rubin, as Associate Executive Director of the Directorate for Economic Analysis, is familiar with the use of cost-benefit analysis by the Commission in its proceedings. Defendant's Brief, Exhibit "I" at 2. The Division of Human Factors within the Directorate for Epidemiology, under James Bradley's directorship, "looks at the 'how' and 'why' of accidental injuries in terms of how the human characteristics interface with the product characteristics—the 'man-machine interface.'" Defendant's Brief Exhibit "J" at 4. Lastly, in determining whether the product at issue in this case contained a

defect that could create a substantial product hazard, the Commission used detailed mathematical models to estimate the number of products remaining in use after various time periods of use and product recalls. Bleschschmidt testified that the number of products in use at the time is an essential piece of information in determining whether a "substantial product hazard" exists. Bleschschmidt Dep. at 84–85.

In addition to the depositions, Miracle seeks more complete and detailed answers to interrogatories relating to the penalty fee amount. In its answers to Interrogatories Numbers 12 through 16, the United States basically stated that when the Commission formulated the penalty fee amount it considered all of the factors it is statutorily mandated to consider under the Act. Defendant argues that these answers are inadequate because they provide "no indication whatsoever of the consideration actually made by the Commission in this case nor does it in any way reflect the arguments that may be made by plaintiff at the trial of this matter."

Finally, Miracle has moved to compel the production of several documents and tape recordings which the United States has claimed are privileged and, thus, undiscoverable. The documents include seven intra-agency memorandum regarding the Miracle proceeding and the tape recordings of two closed meetings conducted by the Commission for the purposes of determining the penalty fee in that case.

## II. APPLICABLE LAW AND DISCUSSION

### A. *General Scope of Discovery*

■ The penalty amount sought by the United States in this case is essentially the equivalent of a prayer for damages. Proper discovery requests relating to the amount of damages recoverable is certainly relevant and therefore permissible under Rule 26 so long as none of the material sought to be discovered is privileged. *Clague v. Bednarski*, 105 F.R.D. 552, 553 (E.D.N.Y.1985); *Sharon v. Time, Inc.*, 103 F.R.D. 86, 90 (S.D.N.Y.1984). In short, nonprivileged materials related to the matter of the penalty fee amount are discoverable. Thus, the key issue is whether the materials sought by Miracle are privileged.

Rule 26(b) of the Federal Rules of Civil Procedure provides for broad and extensive discovery of unprivileged relevant material. Fed.R.Civ.P. 26 Advisory Committee's Notes. The right to discovery, however, is not unlimited. The frequency or extent of discovery may be curtailed if the Court determines that the material sought is unreasonably cumulative or obtainable from a more convenient source, if there had already been ample opportunity for discovery, or if discovery is unduly burdensome or expensive. Fed.R.Civ.P. 26(b)(1). Moreover, the Court may issue protective orders prohibiting depositions regarding relevant matters upon a showing of good cause. "Good cause" exists, according to Rule 26(c), when justice requires the protection of "a party or a person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(e).

### B. *Depositions*

■ Because of the liberal approach taken by the federal rules allowing broad discovery, and because of the Court's power to protect deponents and parties from abuse of discovery, an order to vacate notice to take depositions is viewed by the Court as unusual and unfavorable. *Investment Properties Int'l, Ltd. v. IOS, Ltd.*, 459 F.2d 705, 708 (2nd Cir.1972). Generally, one is required to show both that there is a likelihood of harassment and that the information sought is fully irrelevant before a party is altogether denied the right to take an individual's deposition. *Grinnell Corp. v. Hackett*, 70 F.R.D. 326, 333–34 (D.R.I.1976). The United States correctly points out, however, that high government officials enjoy limited immunity from being deposed in matters about which they have no personal knowledge. This immunity is justified on the grounds that such officials must be allowed the freedom to perform their duties without the constant interference of the discovery process. *Kyle Engineering Co. v. Kleppe*, 600 F.2d 226, 231–32 (9th Cir.1979). Before a party

may take the deposition of such an official, that party must show that this particular official's testimony is likely to lead to the discovery of admissible evidence or is pertinent to material issues in the lawsuit. *Peoples v. United States Dept. of Agriculture,* 427 F.2d 561, 567 (D.C.Cir.1970). Furthermore, the evidence must not be available through some other less burdensome or obtrusive sources. *Sweeney v. Bond,* 669 F.2d 542, 546 (8th Cir.1982).

■ In this case, there is material in the record to indicate that Scanlon has some personal knowledge of relevant facts. Scanlon was one of the four commissioners who attended and participated in the meeting of November 14, 1985, in which the Commission rejected Miracle's settlement offer and determined to set the penalty amount at $150,000.00. Defendant's Brief, Exhibit "A". Moreover, Thome stated in his deposition that at the meeting on November 14, 1985, the commissioners were briefed by the staff of the rationale for setting the penalty at $150,000.00. Thome Dep. at 69–70 and 77–79. However, as Chairman of the Commission, Scanlon is precisely the type of individual that governmental immunity is intended to protect. Miracle has failed to demonstrate that it has no alternative source for evidence to justify interrupting the work of this top official for the purposes of taking a deposition in this matter.

A prime candidate as an alternative source to Scanlon to obtain this same information is David Schmeltzer. Thome has stated that Schmeltzer, as Associate Director of the Directorate for Compliance and Administrative Litigation, has personal knowledge of both the process by which penalty fees are determined, in general, *id.* at 64 and 67–68, and how these fees were determined in the Miracle proceeding, in particular. *Id.* at 64 and 67–68. Schmeltzer will be able to explain what he related to the Commissioners in his presentation to them in the Miracle proceeding. Thus, Schmeltzer may provide an adequate alternative source of the information which was sought from Scanlon.

■ Miracle wishes to depose Gidding for two reasons. One, as custodian of record for the documents already produced and documents still sought in this case, Miracle desires that Gidding authenticate these documents. Authentication of documents is, of course, required under the Federal Rules of Evidence. Fed.R.Evid. 901. Two, Miracle argues that "given the somewhat haphazard manner of filing practiced by the CPSC, only Mr. Gidding has knowledge of the process that was used to locate documents to respond to Miracle's request." In other words, Miracle wants to use discovery in this instance to determine the adequacy of the search made for these documents and to determine the existence and location of any other related documents. This is a permissible use of discovery. *Houdry Process Corp. v. Commonwealth Oil Ref. Co.,* 24 F.R.D. 58, 62–63 (S.D.N.Y.1959); see also *Smith v. Schlesinger,* 513 F.2d 462, 473 (D.C.Cir. 1975) (party may discover evidence inadmissible at trial when such information will aid in preparation and organization for litigation).

Finally, the United States objects to deposing Verhalen, Rubin, Bradley, and Designee(s) to be identified pursuant to Rule 30(b)(6) because their testimony is irrelevant to matters at issue in this case. Miracle, however, persuasively argues to the contrary in its Brief filed on August 26, 1987. Because he directed investigations and studies of accidents and injuries arising from the use of playground equipment, Miracle asserts that Verhalen possesses specific knowledge of how much information the Commission had actually accumulated, as well as its general ability to gather and evaluate data on injuries occurring on playground equipment. Such testimony would be relevant to whether the Commission had sufficient knowledge of Miracle's product to trigger the running of the statute of limitations prior to May 1981. Bradley's testimony, according to Miracle, is also relevant to proving its statute of limitations defense. Analysis of human factors is a component of the Commission's approach in its examination of a product for defects. Dahn Dep. at 204–05. By

deposing Bradley, Miracle hopes to attain information relating to plaintiff's level of expertise in this area and determine how much information on Miracle's product and other products like it that the Commission had actually accumulated by the early 1980's. Clearly, Rule 26(b)(1) of the Federal Rules of Civil Procedure permits discovery in the area of affirmative defenses. The United States has not shown that either Verhalen or Bradley enjoy any immunity that would prohibit the taking of their depositions.

■ Miracle further demonstrates that information relating to cost-benefit analysis which Rubin may testify to is relevant to determining how the Commission reached its determination that Miracle's product possessed a defect that could create a "substantial product hazard." This determination is discoverable as it influenced the penalty amount sought against Miracle. 15 U.S.C. §§ 2064, 2068, and 2069. Additionally, defendant claims that testimony about the mathematical models used by the Commission to estimate the number of products remaining in use after various time periods of use and after product recalls is also relevant to the Commission's determination of whether the product contained a defect that could create a "substantial product hazard." Discovery through the depositions of Rubin and the unidentified witness(es) is clearly justified because a defendant is entitled to know the factual allegations supporting the penalty amount sought by the United States. *B–H Transp. Co. v. Great Atlantic & Pacific Tea Co.*, 44 F.R.D. 436, 438–39 (N.D.N.Y. 1968). These individuals are appropriate sources for this relevant and unprotected information. Moreover, after balancing Miracle's need for discovery against interrupting the work that these individuals do for the Commission, the taking of these depositions is not barred by governmental immunity.

In summary, the depositions of all of those individuals that Miracle has noticed for deposition will be allowed with the single exception of Terrence Scanlon.

## C. *Interrogatories*

Miracle's Interrogatory Numbers 12 through 16 request detailed explanations of the roles each of the five factors set forth in the Act played in formulating the penalty fee assessed against Miracle. These interrogatories further asked the United States to identify and distinguish all other Commission proceedings in which each of these factors were considered.

■ In its answers to these interrogatories, the United States simply stated: "The Commission considers each of the factors statutorily set forth and affords them such weight as the Commission deems appropriate based on the facts before it." The United States declined to compare previous cases with this matter stating that the request seeks irrelevant information, incorporates ambiguous language, and requires an excessive expenditure of resources on its part to respond. Miracle considers this reply inadequate and states in its Brief Filed July 28, 1987, that it be provided with more responsive answers to these interrogatories.[1]

■ It is imperative that parties be responsive in answering interrogatories. In the context of these interrogatories relating to the issue of damages, the United States is not required to provide an exhaustive catalog accompanied by commentary on all of the proceedings over which the Commission has presided. However, the United States must at least itemize the elements of the total amount of relief requested and explain in detail how that amount was formulated.

---

**1.** Miracle failed to appropriately file a motion under Rule 37 to compel the United States to provide more responsive answers to its interrogatories. Miracle did, however, make reference to the inadequacy of these answers in the affidavit it submitted with its Motion to Compel Documents. Furthermore, the United States responded to Miracle on this issue in the Motion for a Protective Order which it filed on August 13, 1987. Thus, the Court will address the matter in this Order.

## D. *Tape Recordings and Documents*

■ Miracle's Motion to Compel Discovery includes requests for tape recordings of two closed Commission meetings and several intra-agency memoranda involving the Miracle proceeding. The United States contends that these materials are protected variously by the attorney-client, work product, and deliberative process privileges. These privileges do not necessarily provide absolute protection, however, since not all communications between counsel and client are privileged, and work product and deliberative process privileges may be suspended to allow discovery of relevant evidence if the party requesting discovery can show that denial of its request would cause it undue hardship in adequately preparing and trying its case.

### 1. *Tape Recordings*

■ The United States maintains that the "tapes reflect discussions between Commission attorneys and the Commission regarding legal strategies for the enforcement proceeding against Miracle." Consequently, the United States claims that the tapes are protected by the attorney-client privilege.

The tapes in question possibly contain three distinct matters. First, these recordings may include discussions of whether to file a lawsuit. Because they relate to litigation strategy, these discussions are protected by the attorney-client privilege. Second, the recordings may include comments which intermingle both litigation decisions and the determination of the penalty amount. Insofar as these statements relate to litigation strategy, they are also protected by the attorney-client privilege. Third, the tapes may contain material which is wholly confined to discussion of the penalty amount. Miracle is entitled to discovery of those portions of the recordings, if any, that fall into this third category because this material relates purely to the issue of damages. The Court could perform an in camera inspection of the recordings so as to categorize their contents and separate what is and is not discoverable. However, documents within the purview of the attorney-client privilege are protected zealously. *Klitzman, Klitzman and Gallagher v. Krut*, 744 F.2d 955, 960 (3rd Cir.1984). This court will not pursue the in camera inspection alternative unless it is absolutely necessary to ensure adequate discovery.

■ The United States also asserts that these tapes are protected by the work product privilege. Under Rule 26(b)(3) of the Federal Rules of Civil Procedure, materials generated in anticipation of litigation are only discoverable upon a showing that the party seeking discovery has substantial need for materials in preparation of its case, and that it is unable to obtain the substantial equivalent of the material by other means without undue hardship. Fed. R.Civ.P. 26(b)(3).

It is clear that Miracle has a substantial need to discover materials that relate to the formulation of the penalty amount. If Miracle is to prepare for trial, it is very important that it have specific information as to how the Commission calculated the $150,-000.00 penalty fee. Up to this point, the United States has merely stated that it determined the penalty after reviewing the factors set forth in the Act. This explanation is inadequate to allow Miracle to prepare for trial on the issue of the penalty fee amount. Thus, the question of whether these tapes are protected by the work product privilege turns on whether the Miracle has alternative sources from which to attain this information. Depositions and/or interrogatories, if responsive, may provide adequate alternative sources for discovery in this area.

Finally, the United States contends that these tapes are protected by the deliberative process privilege. In determining whether a litigant's need for deliberative materials overrides the government's interest in nondisclosure, the Court may consider various factors, including "1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *FTC v. Warner*

*Communications, Inc.*, 742 F.2d 1156, 1161 (9th Cir.1984). The United States properly points out that the deliberative process privilege is crucial to encouraging the flow of independent thought and honest opinion regarding agency policy and action. Consequently, the privilege should be suspended only when it denies access to the only available source of relevant evidence.

The Court finds that, at this time, the tape recordings which Miracle seeks to discover are protected by the attorney-client, work product, and deliberative process privileges. This decision is based on the fact that alternative sources for discovery of this information appear to be available. The United State should be compelled to produce these tapes only if discovery cannot occur through alternative means. In the instant case, Miracle may obtain adequate discovery of materials on the penalty fee issue through depositions and interrogatories.

### 2. *Memoranda*

The United States maintains that the memoranda requested by Miracle in its Motion to Compel Documents is protected by the same privileges that it claims protects the tape recordings of the closed Commission meetings: attorney-client, work product, and deliberative process privileges. The matter contained in the memoranda is similar to that contained in the tape recordings. Dawson Declaration at 2–3; Lacy Declaration at 1–4. Thus, the same law is applicable and the same conclusions are reached. Just as with the tape recordings, the memoranda is discoverable only as a last resort. Production of these materials will not be compelled unless the depositions and/or the interrogatories do not provide Miracle with adequate discovery regarding the penalty being sought.

### III. CONCLUSION

Miracle endeavors to compel discovery of three categories of materials—depositions, interrogatories, and documents—in order to prepare its case on the issue of damages. Damages are, of course, relevant and Miracle has the right to discovery in this area.

However, the United States has valid concerns regarding the discovery proposed by the Miracle. High government officials should not be required to undergo depositions whenever an agency is involved in litigation. A party should not have to expend unreasonable quantities of resources to answer interrogatories. The work product and deliberative process privileges should not be suspended without a showing of genuine need due to the unavailability of alternative sources for discovery. Finally, the confidentiality of the attorney-client relationship must be preserved.

Balancing the foregoing considerations, Miracle may achieve the discovery it is entitled to, namely a more detailed explanation of the Commission's rationale for assessing the $150,000 penalty fee against Miracle, by taking all of the depositions it requests, with the exception of the Commission's Chairman, Terrence Scanlon, and through the receipt of more responsive answers to the interrogatories it has submitted to the United States. Specifically, the United States must at least itemize the elements of the total amount of relief requested and explain in detail how that amount was formulated. Miracle may not, however, review the tape recordings and memoranda it requests unless the deposition testimony and/or answers to interrogatories prove completely inadequate to ensure fair discovery on the issue of damages claimed by the United States.

Therefore, the Court denies the United States' Motions for Protective Orders and orders the noticed depositions of David Schmeltzer, Michael Gidding, Robert Verhalen, Paul Rubin, James Bradley, and Designee(s) to be identified pursuant to Rule 30(b)(6) to go forward. The Court does, however, grant the Protective Order requested by the United States regarding the notice of deposition of Terrence Scanlon. Further, the Court denies Miracle's Motion to Compel Documents. Finally, the Court orders the United States to draft responsive answers to Miracle's Interrogatories Numbers 12 through 16.

IT IS SO ORDERED.