UNITED STATES of America ex rel. Dr. Nira SCHWARTZ,

v.

TRW, INC. and Boeing North America, Inc.

No. CV 96–3065–RSWL(RCx).

United States District Court, C.D. California.

Nov. 13, 2002.

---

7. SWAPA's counsel, Stanley Lubin, represented petitioner in this action.

Joseph C. Barrera, Law Offices of Joseph C. Barrera, San Pedro, CA, for Plaintiff.

Richard E. Drooyan, Munger, Tolles & Olson, Los Angeles, CA, for TRW, Inc.

James J. Gallagher, Susan A. Mitchell, McKenna, Long & Aldridge, Los Angeles, CA, for Boeing North America, Inc.

Dennis Egan, U.S. Dept. of Justice, Washington, DC, for United States.

**PROCEEDINGS: DEFENDANTS' MOTION TO COMPEL THE UNITED STATES TO PRODUCE AND AUTHORIZE THE PRODUCTION OF DOCUMENTS PURSUANT TO RULE 45 SUBPOENAS**

CHAPMAN, United States Magistrate Judge.

On May 23, 2002, defendants filed a notice of motion and motion to compel the United States to produce and authorize the production of documents pursuant to Rule 45 subpoenas, a joint stipulation, and the supporting declaration of Susan R. Szabo with exhibits. On July 3, 2002, defendant TRW Inc. filed a supplemental memorandum. On November 8, 2002, defendant TRW Inc. filed another supplemental memorandum.

Oral argument was held on November 13, 2002, before Magistrate Judge Rosalyn M. Chapman. Joseph C. Barrera, attorney-at-law, appeared on behalf of relator Dr. Nira Schwartz, who was also present. Richard E. Drooyan, attorney-at-law with the firm Munger, Tolles & Olson, appeared on behalf of defendant TRW, Inc., and James R. Gallagher and Susan Mitchell, attorneys-at-law with the firm McKenna Long & Aldridge, appeared on behalf of defendant Boeing Company. Dennis Egan, Assistant United States Attorney, appeared on behalf of non-party United States.

## BACKGROUND

### I

This case has a long and complicated history, which is described, to some extent, in *United States ex rel. Schwartz v. TRW, Inc.,*

118 F.Supp.2d 991, 992–93 (C.D.Ca.2000). On October 12, 2001, plaintiff/relator Dr. Nira Schwartz filed her Sixth Amended Complaint ("SAC"), which is operative, setting forth three causes of action: (1) violation of the False Claims Act, 31 U.S.C. § 3729, et seq., on behalf of the United States against defendants TRW and Boeing; (2) wrongful termination in violation of 31 U.S.C. § 3730(h) against defendant TRW; and (3) wrongful termination in violation of California public policy against defendant TRW. Plaintiff Dr. Nira Schwartz was employed by TRW from September 1995 to March 1996. SAC ¶ 75. She alleges that commencing in 1990, the United States sought to develop a ground-based interceptive system for the national missile defense ("NMD") program, and, in this context, contracted with defendant Boeing as the prime contractor to develop an exoatmospheric kill vehicle ("EKV") to intercept incoming ballistic missiles, and defendant Boeing, in turn, subcontracted with defendant TRW to develop discrimination algorithms to enable the EKV to discriminate between the infrared "signatures" of incoming missiles and decoys launched with those missiles. SAC, ¶¶ 20–35. In her False Claims Act or qui tam cause of action, relator claims defendants TRW and Boeing made false statements or false claims for payment to the United States ("Government") in connection with the NMD program, the EKV and the discrimination technology, which was "fundamentally flawed," as defendants Boeing and TRW allegedly knew; that defendants falsified data; that defendants engaged in a concerted effort to limit the data they disclosed to the Government to conceal severe flaws in the baseline algorithm; that defendants rigged a flight test; and that defendants repeatedly failed to comply with technical requirements and specifications set forth in the Technical Requirements Document ("TRD"), but falsely told the Government they had. SAC ¶¶ 7, 10, 57–61, 67–72, Appendix A. In her wrongful termination causes of action against defendant TRW, plaintiff claims she was wrongfully suspended and later terminated for misconduct; whereas, in fact, it was because she complained about the false claims made to the

Government regarding the NMD research. SAC, ¶¶ 73–85.

The joint stipulation establishes that after relator filed her initial complaint under seal, the Government conducted an investigation to determine whether to intervene in this action. As part of that investigation, the Government retained Nichols Research Corporation to independently review defendant TRW's discrimination software and, subsequently, formed a panel consisting of representatives from Aerospace Corporation ("Aerospace"), Lawrence Livermore National Laboratory ("Lawrence Livermore"), and MIT Lincoln Laboratory for the same purpose. Thereafter, the Government declined to intervene in the suit.

## II

On March 14, 2002, defendant Boeing served Rule 45 subpoenas seeking production of 40 documents relating to the NMD research on EKV and discrimination technology, no later than April 15, 2002, on the following five United States agencies: The Department of Justice ("DOJ"); the Department of Defense ("DOD"); the Missile Defense Agency ("MDA"); the Department of Justice's Department of Criminal Investigation Service; and the United States Army Space and Missile Command ("Army"). Szabo Decl., ¶ 2, Exhs. A–E. On April 17, 2002, the United States objected to producing the 40 documents subpoenaed by defendant Boeing, noting that 39 of the documents were "classified" under Executive Order 12958 and their release "could reasonably be expected to cause damage to the national security[,]" and "the one unclassified document subpoenaed ... contains information that is proprietary, export-controlled, and otherwise restricted." Szabo Decl., ¶ 5, Exh. H. As to the latter document, the United States would make it available "only if there is a Protective Order in place covering that document." *Id.*

On March 15, 2002, defendant TRW served Rule 45 subpoenas duces tecum on Aerospace and Lawrence Livermore seeking production of 39 categories of documents pertaining to the Phase One Engineering Team ("POET") investigation of relator's claims un-

der the False Claims Act, no later than April 15, 2002. Szabo Decl., ¶¶ 3–4, Exhs. F–G. Aerospace responded by producing certain documents and withholding eight documents set forth on a privilege log as "classified" and, similarly, Lawrence Livermore responded by producing certain documents and withholding 26 documents set forth on a privilege log as "classified." Szabo Decl., ¶¶ 6–7, Exhs. I–J.

## DISCUSSION

### III

■ This discovery dispute focuses on relator's qui tam cause of action under the False Claims Act, which "is a tool to fight fraud on the government." *Seal 1 v. Seal A,* 255 F.3d 1154, 1158 (9th Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 1605, 152 L.Ed.2d 620 (2002). As the Ninth Circuit has noted:

> Congress enacted the False Claims Act to "enhance the Government's ability to recover losses sustained as a result of fraud against the Government," S.Rep. No. 345, 99th Cong., 2d Sess. 1 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, and chose a civil action for damages on behalf of the United States as the mechanism to encourage individuals with knowledge of fraud to come forward.

*United States ex rel. Barajas v. Northrop Corp.,* 5 F.3d 407, 409 (9th Cir.1993) (footnote omitted), *cert. denied,* 511 U.S. 1033, 114 S.Ct. 1543, 128 L.Ed.2d 195 (1994). Under the False Claims Act,

> the government or a private party may bring a civil action against a party allegedly committing such fraud. 31 U.S.C. §§ 3730(a), (b). The qui tam provisions of the statute—those pertaining to private parties—provide incentives for insiders with knowledge of fraud on the government to come forward with that knowledge. 31 U.S.C. § 3730(d). If a private party brings a qui tam action, she does so as a "relator," on behalf of the government, which may choose to intervene in the action. If the relator is successful, she is entitled to a share of the recovery, wheth-

er or not the government intervenes. 31 U.S.C. §§ 3730(d)(1), (2). *Seal 1*, 255 F.3d at 1158; *see also United States ex rel. Schwartz*, 118 F.Supp.2d at 993 ("Federal qui tam suits are brought under the False Claims Act, 31 U.S.C. §§ 3729–3733, which provides penalties for one who knowingly presents a false claim to the government, and also offers incentives to whistleblowers who expose false claims. The nature of a qui tam action is that the relator, here Schwartz, represents the United States.").

## IV

■ Rule 26(b)(1), as amended, permits discovery in civil actions of "any matter, not privileged, that is relevant to the claim or defense of any party...." Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute. *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D.Cal. 1998). Toward this end, Rule 26(b) is liberally interpreted to permit wide-ranging discovery of information even though the information may not be admissible at the trial. *Jones v. Commander, Kansas Army Ammunitions Plant*, 147 F.R.D. 248, 250 (D.Kan. 1993).

Federal Rule of Civil Procedure 45 governs subpoenas duces tecum for the production of documents with or without the taking of a deposition. One of the purposes of Rule 45 is "to facilitate access outside the deposition procedure provided by Rule 30 to documents and other information in the possession of persons who are not parties...." Advisory Committee Notes to 1991 Amendment of Rule 45. "The non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34." *Id.* Under Rule 34, a request for production of documents applies to "matters within the scope of Rule 26(b)." Fed. R.Civ.P. 34(a).

■ Under Rule 45, the nonparty served with the subpoena duces tecum must make objections to it within 14 days after service or before the time for compliance, if less than 14 days. Fed.R.Civ.P. 45(c)(2)(B). Failure to serve timely objections waives all grounds for objection, including privilege. *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998).[1] "When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim." Fed.R.Civ.P. 45(d)(2).

The Government does not dispute that the 40 documents defendants seek from it, or the documents defendants seek from Aerospace and Lawrence Livermore, are relevant to relator's claims and defendants' defenses within the meaning of Rule 26(b)(1). Rather, the Government contends that 38 of the 40 documents[2] defendants seek from it are "classified" for national security reasons under Executive Order 12958, 60 Fed.Reg. 19825 (April 17, 1995), and the POET information sought from Aerospace and Lawrence Livermore is "classified" under § 4.2 of Executive Order 12958; thus, the documents cannot be released.

■ "[T]he privilege against revealing military secrets ... is well established in the law of evidence." *United States v. Reynolds*, 345 U.S. 1, 6–7, 73 S.Ct. 528, 531, 97 L.Ed. 727 (1953); *see also Kasza v. Browner*, 133 F.3d 1159, 1165 (9th Cir.)("The state secrets privilege is a common law evidentiary privilege that allows the government to deny discovery of military secrets."), *cert. denied*, 525 U.S. 967, 119 S.Ct. 414, 142 L.Ed.2d 336 (1998). As the United States Supreme Court has held:

The privilege belongs to the Government and must be asserted by it; it can neither

---

1. Defendants do not contend the United States or the private companies served with the Rule 45 subpoenas failed to make timely objections.

2. Although the United States initially objected that 39 of the document requests sought classified information, it is now "withholding only 38 documents as classified." Joint Stip. at 3, n. 3, 9:25–10:1.

be claimed nor waived by a private party. It is not to be lightly invoked. There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer.

*Reynolds,* 345 U.S. at 7–8, 73 S.Ct. at 531–532 (footnotes omitted). Moreover, as here,

[a] government department may intervene in litigation to which it is not a party and assert the privilege, thereby preventing either party in the litigation from obtaining sensitive government information in discovery.

*Bareford v. General Dynamics Corp.,* 973 F.2d 1138, 1141 (5th Cir.1992), *cert. denied,* 507 U.S. 1029, 113 S.Ct. 1843, 123 L.Ed.2d 468 (1993).

 The scope of the military or state secrets privilege is quite broad:

The government may use the state secrets privilege to withhold a broad range of information. Although "whenever possible, sensitive information must be disentangled from nonsensitive information to allow for the release of the latter," *Ellsberg v. Mitchell,* 709 F.2d 51, 57 (D.C.Cir.1983), courts recognize the inherent limitations in trying to separate classified and unclassified information[.]

*Kasza,* 133 F.3d at 1166. "Once the privilege is properly invoked and the court is satisfied as to the danger of divulging state secrets, the privilege is absolute[.]" *Id.*[3]

 "The court itself must determine whether the circumstances are appropriate for the claim of privilege, and yet do so without forcing a disclosure of the very thing the privilege is designed to protect." *Reynolds,* 345 U.S. at 8, 73 S.Ct. at 532 (footnotes omitted). Further,

some ... formula of compromise must be applied.... Judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers. Yet we will not go so far as to say that the court may automatically require a complete disclosure to the judge before the claim of privilege will be accepted in any case. It may be possible to satisfy the court, from all the circumstances of the case, that there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged. When this is the case, the occasion for the privilege is appropriate, and the court should not jeopardize the security which the privilege is mean to protect by insisting upon an examination of the evidence, even by the judge alone, in chambers.

*Id.,* at 9–10, 73 S.Ct. at 533.

 The party seeking to overturn the claim of privilege must make a showing of necessity, and,

[i]n each case, the showing of necessity which is made will determine how far the court should probe in satisfying itself that the occasion for invoking the privilege is appropriate. Where there is a strong showing of necessity, the claim of privilege should not be lightly accepted, but even the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that military secrets are at stake.

*Id.,* at 11, 73 S.Ct. at 533 (footnote omitted); *Totten v. United States,* 92 U.S.(2 Otto.) 105, 107, 23 L.Ed. 605 (1875).

 Here, as defendants argue, the Government has not properly claimed the state secrets privilege since, despite having several months in which to submit evidence by declaration of otherwise, it has not provided the Court with a "formal claim of privilege lodged by the head of the department which has control over the matter, after actual personal consideration by that officer."

---

**3.** Many of the recent cases discussing the military or state secrets privilege arise in the criminal context; yet, the Supreme Court has warned:
The rationale of the criminal cases is that, since the Government which prosecutes an accused also has the duty to see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense. Such rationale has no application in a civil forum where the Government is not the moving party, but is the defendant only on terms to which it has consented.
*Reynolds,* 345 U.S. at 12, 73 S.Ct. at 534.

*Reynolds,* 345 U.S. at 7–8, 73 S.Ct. at 532. However, as some or all of the documents requested may fall within the purview of the state secrets privilege, the Government should have an additional opportunity to properly claim the privilege. *See Bareford,* 973 F.2d at 1144 (dismissing plaintiffs' complaint that several defense contractors manufactured and designed defective weapons system, then fraudulently concealed the defects, because "the trial of this case would inevitably lead to a significant risk that highly sensitive information concerning th[e] defense system would be disclosed"); *Zuckerbraun v. General Dynamics Corp.,* 935 F.2d 544, 547 (2d Cir.1991)("[I]t is self-evident that disclosure of secret data and tactics concerning the weapons systems of the most technically advanced and heavily relied upon of our nation's warships may reasonably be viewed as inimical to national security."). Therefore, the Court grants the Government sixty days to submit, if it so chooses, the requisite declaration(s) to formally claim the state secrets privilege. Any such declaration(s) " 'must set forth, with enough particularity for the court to make an informed decision, the nature of the material withheld and of the threat to the national security should it be revealed.' " *Yang v. Reno,* 157 F.R.D. 625, 632–33 (M.D.Pa.1994) (citations omitted).

### ORDER

The defendants' motion is granted, and the United States shall produce to defendants the documents responsive to the Rule 45 subpoenas, and authorize others to produce documents to defendants responsive to the Rule 45 subpoenas, no later than sixty (60) days from the date of this Order unless, during that time, the United States files a declaration or declarations by the head(s) of the department(s) that has/have control over the matter, in which case this Order is stayed while the Court considers that evidence. Prior to producing any documents to defendants, the United States and the parties shall enter into a protective order directly covering classified documents, such as proposed in Exhibit A to defendant TRW's Response to

July 12, 2002 Order, and submit said Order to the Court for its approval.