**KLESCH & COMPANY LIMITED,**
**Plaintiff,**

v.

**LIBERTY MEDIA CORPORATION,**
**John C. Malone, and Robert R.**
**Bennett, Defendants.**

**No. CIV.A. 01–D–1456 (CBS).**

United States District Court,
D. Colorado.

June 17, 2003.

Peter John Korneffel, Jr., Timothy R. Beyer, Brownstein, Hyatt & Farber, P.C., Denver, CO, Laurin Beth Grollman, Kasowitz, Benson, Torres & Friedman, LLP, New York City, for Plaintiff/Counter-defendants.

Lawrence W. Treece, Sherman & Howard, Denver, CO, Richard Stan Mortenson, Baker & Potts, LLP, Washington, DC, for Defendants/Counter-claimants.

## MEMORANDUM ORDER ON DISCOVERY MOTIONS

SHAFFER, United States Magistrate Judge.

THIS MATTER comes before the court on Plaintiff Klesch & Company Limited's ("Klesch") Motion to Compel Production of Documents Responsive to Subpoena Served on N.M. Rothschild & Sons (Denver) Inc., filed on April 24, 2003. Non-party N.M. Rothschild & Sons (Denver) (hereinafter "Rothschild (Denver)") filed a Memorandum of Law in Opposition on June 3, 2003. Also pending before the court is Defendant Liberty Media Corp.'s ("Liberty Media") Motion to Issue a Subpoena to Compel the Appearance of Warren Mobley at a Deposition, filed on May 21, 2003. Plaintiff Klesch filed a Memorandum of Law in Opposition to Liberty Media's motion on June 3, 2003. Pursuant to a Order of Reference to Magistrate Judge, dated August 21, 2001, this matter was referred to the Magistrate Judge to, *inter alia,* "hear and determine pretrial matters, including discovery and other non-dispositive motions."

On June 5, 2003, the court held a hearing on the instant discovery motions. After considering the arguments advanced in the parties' briefs and by counsel during the June 5th hearing, as well as the applicable law, the

court denied without prejudice Plaintiff Klesch's motion to compel and granted Defendant Liberty Media's motion to issue subpoena. This Memorandum Order sets forth in greater detail the reasons for the court's decisions.

## FACTUAL BACKGROUND

Klesch & Company Limited initiated the instant action on July 27, 2001, with a Complaint alleging fraud against all named defendants and separate claims against Defendant Liberty Media for breach of fiduciary duty, breach of contract, promissory estoppel, unjust enrichment, negligent misrepresentation, tortious interference with economic advantage, and misappropriation of business value. Plaintiff generally alleges that it formed a partnership with Liberty Media in February 2001 to pursue a lucrative opportunity developed by Klesch to acquire an interest in certain Deutsche Telekom AG cable television networks in Germany. Plaintiff contends that it entered into this partnership, and rejected other willing partners and investors, based on Liberty Media's agreement that the parties would pursue the Deutsche Telekom deal as equal partners. Liberty Media allegedly usurped the business opportunity for itself after Klesch provided material information. Defendants Malone and Bennett, acting on behalf of Liberty Media, allegedly conveyed false information to Deutsche Telekom and made material misrepresentations and omissions to Klesch regarding Liberty Media's intentions concerning the partnership. Plaintiff contends that it was deprived of approximately $5 billion in value as a result of the Defendants' wrongful actions.

Defendant Liberty Media has filed counterclaims seeking declaratory judgments as to the parties' June 7, 2001 Letter Agreement and alleging fraud and negligent misrepresentation on the part of Gary Klesch, in his personal capacity on behalf of Klesch & Company Limited. More specifically, Liberty Media contends that the evolving nature of the proposed transaction with Deutsche Telekom prompted the parties to revise their business relationship through a Letter Agreement executed on June 7, 2001. De-

fendant claims this document, which superseded the parties' earlier March 16 Letter Agreement, was the result of extensive, arms-length negotiations. Liberty Media alleges that Klesch subsequently repudiated the June 7th Letter Agreement and ceased to perform its obligations, thereby materially breaching the parties' only enforceable contract.

## ANALYSIS

### I. *Plaintiff's Motion to Compel Production of Documents*

Klesch & Company Limited has moved to compel the production of documents responsive to a subpoena *duces tecum* served on non-party N.M. Rothschild & Sons (Denver). The subpoena directs Rothschild (Denver) to produce any responsive documents "within its possession, custody or control, including documents within the possession, custody or control of its affiliates, officers, employees, agents and representatives," and broadly defines "Rothschild" to include "Rothschild (Denver) and each of its current or former subsidiaries, affiliates, parents, predecessors and successors, divisions, departments and operating units." Plaintiff's subpoena requires production of

> All documents from February 1, 2001 through and including December 31, 2002 concerning Liberty Media's and/or Klesch's proposed acquisition of any of Telekom's regional networks, including but not limited to, schedules, planners, notes, correspondence, memos and electronic mail concerning communications among any of Liberty Media, Rothschild, Telekom and/or the German Federal Cartel Office, but not including drafts or the final versions of documents constituting agreements between Klesch and/or Liberty Medial and Telekom, submissions to the German Federal Cartel Office and documents created by, provided by, or presented to Klesch and/or Jefferies.

*See* Notice of Subpoena and Subpoena *Duces Tecum* attached as Exhibit F to Klesch & Company's Motion to Compel.

The parties apparently concede that in 1999, Deutsche Telekom hired Rothschild en-

tities to coordinate a competitive bidding process in order to sell interests in Deutsche Telekom's nationwide German cable network. Jonathon Paine, the managing director of N.M. Rothschild & Sons Limited (United Kingdom), was one of the individuals primarily responsible for communicating with bidders on behalf of Deutsche Telekom. It also appears that Rothschild GmbH (Germany) played a role in the Deutsche Telekom bidding process.

Rule 45(a)(1)(C) of the Federal Rules of Civil Procedure generally provides that a subpoena may be issued directing a nonparty "to produce and permit inspection and copying of designated books, documents or tangible things in the possession, custody or control of that person." This provision should be read in conjunction with Fed. R.Civ.P. 26 and 34. *See McLean v. Prudential S.S. Co.*, 36 F.R.D. 421, 424 (E.D.Va. 1965); *Fox v. House* 29 F.Supp. 673, 676 (E.D.Okl.1939). *See also Kendrick v. Heckler*, 778 F.2d 253, 257 (5th Cir.1985) (noting that discovery through a subpoena *duces tecum* is intended to be co-extensive with Rule 34). Resolution of the pending motion hinges on the degree to which Rothschild (Denver) has possession, custody or control over documents and records maintained by its affiliated companies. Ultimately, Klesch has the burden of establishing that the party from whom documents are sought has the requisite possession, custody or control. *Norman v. Young*, 422 F.2d 470, 472 (10th Cir.1970).

■ For purposes of Fed.R.Civ. 34, documents are deemed to be in a party's possession, custody or control if that party has actual possession, custody or control of the materials "*or* has the legal right to obtain the documents on demand." *Resolution Trust Corp. v. Deloitte & Touche*, 145 F.R.D. 108, 110 (D.Colo.1992). *See also Golden Trade v. Lee Apparel Co.*, 143 F.R.D. 514, 525 (S.D.N.Y.1992) (Rule 34 is "customarily interpreted as requiring that the party have the 'legal right to obtain the documents requested on demand'"). Some courts have construed "control" more broadly to include the "practical ability to obtain the materials sought upon demand." *See, e.g., Securities and Exchange Commission v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 471 (S.D.N.Y. 2000); *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 636 (D.Minn.2000). *But see Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir.1993) ("the fact that a party could obtain a document if it tried hard enough and maybe if it didn't try hard at all does not mean that the document is in its possession, custody or control; in fact it means the opposite"). However, even under the most expansive interpretation of "control," the "practical ability" to demand production must be accompanied by a similar ability to enforce compliance with that demand.

■ Klesch argues that Rothschild (Denver) is subject to personal jurisdiction in this forum and has "control" over the requested documents by virtue of its affiliation with N.M. Rothschild & Sons Limited (United Kingdom) and Rothschild GmbH (Germany). Plaintiff cites N.M. Rothschild & Sons Limited's Annual Report and website which touts Rothschild's "world presence" as evidenced by "over 40 offices in more than 30 countries and ... more than 2,000 people around the world." *See* N.M. Rothschild & Sons Limited Annual Report 2002, attached as Exhibit E to Klesch & Company's Motion to Compel. As further support for its motion, Klesch relies upon the unpublished decision in *Dietrich v. Bauer*, 2000 WL 1171132 (S.D.N.Y. 2000). I find that Plaintiff's reliance is misplaced under the particular facts in this case. In *Dietrich*, the district court required a parent corporation to produce, pursuant to a subpoena *duces tecum*, bank records in the possession of an overseas wholly-owned subsidiary. For purposes of Fed.R.Civ.P. 45(a)(1)(C), the district court held that "control" means "the legal right, authority, or practical ability to obtain the materials sought upon demand." *Id.* at 1171132, at *3. Notably, in *Dietrich*, the parent corporation conceded its ability to direct its subsidiary to produce the requested documents. The parent corporation exercised operational control and oversight over the activities of its subsidiaries, established company-wide policies applicable to the subsidiaries, and shared managing executives with the pertinent sub-

sidiary. The relevant facts in this case are readily distinguishable.[1]

The record before the court dispels any notion that Rothschild (Denver) has the requisite control over its affiliated companies or the subject documents. Rothschild (Denver)'s business involves natural resource companies based in North and South America. If N.M. Rothschild & Sons Limited (United Kingdom) places a loan based upon a referral from Rothschild (Denver), the Denver company receives a commission. However, Rothschild (Denver) has no authority to enter into a loan agreement on behalf of N.M. Rothschild & Sons Limited (United Kingdom) nor the authority to create any obligation binding on the London company. The Denver entity has no ownership interest in its sister companies. *Cf. In re Citric Acid Litigation,* 191 F.3d 1090, 1106–08 (9th Cir. 1999) (denying motion to compel where subpoenaed U.S. Coopers & Lybrand entity had no management, authority or control over a Swiss Coopers & Lybrand entity, and where the entities did not share profits or losses). Rothschild (Denver) maintains its own books, records, and financial statements, which do not include assets or liabilities of sister companies. The documents responsive to Klesch's subpoena *duces tecum* are not related to business conducted by Rothschild (Denver). Indeed, Rothschild (Denver) has never done business of any kind with Rothschild GmbH (Germany). Rothschild (Denver) insists that it does not have control over or the ability to obtain responsive documents held by its sister companies. *See* Declaration of William Heissenbuttel, attached to Rothschild (Denver) Memorandum of Law in Opposition. *See also Citric Acid Litigation,* 191 F.3d at 1107 (holding that proof of "theoretical control" over an affiliated company's documents is not sufficient for purposes of Rule 45; a showing of actual control is required).

Separate declarations submitted by managing directors of Rothschild GmbH (Germany) and N.M. Rothschild & Sons Limited (United Kingdom) also disclaim Rothschild (Denver)'s control over documents in the possession of its sister companies. Both companies insist that Rothschild (Denver) had no connection or involvement with the Deutsche Telekom engagement, or with services provided to Deutsche Telekom. *Cf. Gerling In't Ins. Co. v. Commissioner,* 839 F.2d 131, 141 (3d Cir.1988) (for purposes of Rule 34, the requisite control over documents is not present where sister corporation are not alter egos or where sister corporations did not "act as one" in effecting the transaction giving rise to the suit). The United Kingdom and German companies never sent documents concerning Deutsche Telekom to Denver, or any other documents unrelated to business matters concerning Rothschild (Denver). N.M. Rothschild & Sons Limited (United Kingdom) and Rothschild (Denver) are not subsidiaries or divisions of each other, and only one member of N.M. Rothschild & Sons Limited (United Kingdom)'s 43–member board of directors served on the Denver company's five-person board of directors. Rothschild GmbH (Germany) has no office in Denver, does no business with Denver, and is not a subsidiary or division of Rothschild (Denver). The Denver and Germany companies have no common officers or directors. Both N.M. Rothschild & Sons Limited (United Kingdom) and Rothschild GmbH (Germany) expressly state that they will not provide responsive documents to Rothschild (Denver). *See* Declaration of Walter Cammann and Peter Brock, and Declaration of Jonathan Westcott, attached to Rothschild (Denver) Memorandum of Law in Opposition.

I conclude that Klesch has not sustained its burden of showing that Rothschild (Den-

---

**1.** The district court in *Dietrich* emphasized that it had personal jurisdiction over the parent corporation that had control over the relevant documents. *Dietrich v. Bauer,* 2000 WL 1171132, *4 (S.D.N.Y.2000). While not necessary to the court's decision, I find little, if any evidence, in the record that would suggest N.M. Rothschild & Sons Limited (United Kingdom) or Rothschild GmbH (Germany) is "doing business" in Colora-

do sufficient to satisfy the minimum due process requirements for personal jurisdiction. *Cf. Hydraulics Unlimited Mfg. Co. v. B/J Mfg. Co.,* 323 F.Supp. 996 (D.Colo.1971) (holding that for purposes of personal jurisdiction, the quality and nature of the non-resident defendants' contacts with Colorado were too indirect and remote from the agreement upon which plaintiff brought suit).

ver) has control over the documents sought by Plaintiff's subpoena *duces tecum.* *Compare Dietrich*, 2000 WL 1171132 at *4. *See also Sithon Maritime Co. v. Mansion*, 1998 WL 182785, *6 (D.Kan.1998) (in denying motion to compel, held that moving party had offered "nothing of substance" to show the requisite control over documents held by a separate legal entity). Accordingly, Plaintiff Klesch & Company Limited's Motion to Compel Production of Documents Responsive to Subpoena Served on N.M. Rothschild & Sons (Denver) Inc., filed on April 24, 2003, is DENIED.

### II. Defendant's Motion to Issue Subpoena

Defendant Liberty Media's motion asks this court to issue a subpoena pursuant to 28 U.S.C. § 1783, requiring a non-party, Warren Mobley, to appear at a deposition. The parties do not dispute that Mr. Mobley is a United States citizen currently residing in Frankfurt, Germany. Liberty Media contends that Mobley has first-hand knowledge of facts relevant to the parties' claims and/or defenses arising out of the alleged partnership and attempted acquisition of German regional cable networks. The Complaint alleges, in part, that in 1999, Klesch had acquired through a bidding process one of Deutsche Telekom's regional cable networks, as well the exclusive right to negotiate for the purchase of two other regional networks. *See* Complaint at ¶ 2. According to Klesch,

> After months of reviewing and analyzing voluminous materials, visiting various sites throughout Germany and meeting with numerous Telekom executives and government regulators to evaluate the networks, Telekom granted Klesch the exclusive negotiation rights to acquire the network for the Hessen region, comprised of approximately 1.3 million cable subscribers (the "Hessen network"). Thereafter, Klesch successfully developed a syndicate of investors to fund the acquisition of the Hessen network and a post-acquisition business strategy, and on or about March 31, 2000, Klesch and Telekom agreed that Klesch could acquire 65% of the Hessen network, with Telekom retaining a 35% residual stake. Klesch's successful acquisition of the Hessen network placed it in a highly

favorable position to acquire more the available networks.

*See* Plaintiff Klesch's Statement of Claims in Amended Scheduling Order, at 2–3. Klesch also has stated that its "successful negotiation of the Hessen Acquisition process resulted in, among other things, an unprecedented working relationship with the involved Telekom executives and regulators and substantially enhanced its ability to pursue the acquisition of additional regional networks." *See* Defendant's Motion to Issue a Subpoena, at 2 (quoting Klesch's Corrected Supplemental Response to Interrogatories at 8).

Liberty Media claims that beginning in early 2000, Warren Mobley provided consulting services to Klesch in connection with efforts to raise funds to acquire regional cable assets from Deutsche Telekom. Mobley later became the Chief Executive Officer of eKabel, the company ultimately formed to operate the Hessen regional cable network. Gary Klesch served as Chairman of the Board of eKabel. Liberty Media maintains that Mobley has personal knowledge of information relevant to

> Klesch's allegations concerning (1) the purported success of its business model for eKabel; (2) the economic performance of eKabel; (3) Gary Klesch's performance as Chairman of the Board; (4) Gary Klesch's working relationship and alleged influence over Deutsche Telekom executives; (5) Klesch's knowledge of an understanding of the German broadband cable industry; (6) Klesch's efforts to use its eKabel ownership position as a means of attracting equity investors for other cable regions; and (7) the capital markets generally in early 2001 and the resulting effect on eKabel.

*See* Defendant's Motion to Issue a Subpoena, at 4–5. During the hearing on June 5, 2002, defense counsel advised this court that Mr. Mobley was willing to participate in a deposition, but only if his presence was compelled by subpoena. The court also notes that Mr. Mobley has not filed any opposition to Liberty Media's pending motion.

Plaintiff argues in opposition that Mobley has no first-hand knowledge of the negotiations or partnership between Klesch and Lib-

erty Media, and, therefore, has no relevant information that would be the proper subject of discovery. Klesch contends that the proposed deposition "serves no purpose other than to harass Mr. Klesch and Mobley." It appears that Plaintiff is gratuitously protecting Mobley from harassment the putative deponent does not perceive and has not asserted. However, Plaintiff's counsel also conceded during the June 5th hearing that Mr. Mobley may not be favorably disposed to Klesch & Company Limited or Gary Klesch. That may explain Klesch's opposition to the pending motion.

■ Defendant Liberty Media seeks relief pursuant to the Walsh Act of 1964, 28 U.S.C. § 1783(a), which provides, in pertinent part, that

[a] court of the United States may order the issuance of a subpoena requiring the appearance of a witness before it, or before a person or body designated by it, of a national or resident of the United States who is in a foreign country . . . if the court finds that particular testimony . . . is necessary in the interest of justice, and . . . if the court finds, in addition, that it is not possible to obtain his testimony in admissible form, without his personal appearance
. . . .

The decision to issue a subpoena under this statute is left to the sound discretion of the court. *In re Thompson,* 213 F.Supp. 372, 374 (S.D.N.Y.1963). Application of the Walsh Act in the context of a civil lawsuit appears to raise an issue of first impression in the Tenth Circuit. I am not persuaded by Plaintiff's argument that application of the Walsh Act should be limited to criminal proceedings. *See* Plaintiff's Memorandum of Law in Opposition, at 7–8. By its very terms, the Act applies in cases "other than a criminal action or proceedings." 28 U.S.C. § 1783.

■ It is undisputed that Mobley is a United States national. Plaintiff Klesch has presented no evidence that would refute Defendant's representation that it is not possible to obtain the deponent's testimony without a subpoena issued by this court. Thus, the pivotal issue is whether Mobley's testimony "is necessary in the interest of justice."

I conclude that the "interest of justice" element must be considered in light of the circumstances of the particular case and, more importantly, the posture of the case when the issue arises. Here, the parties are embroiled in protracted discovery. The court has well-established authority to regulate discovery procedures to promote the interests of justice. For example, Fed. R.Civ.P. 26(d) states that a court may regulate the sequence and timing of discovery "in the interests of justice." Similarly, Fed. R.Civ.P. 26(c) authorizes the court to issue any protective "which justice requires." Such a protective order may be necessary to protect a person or party from annoyance, embarrassment, oppression or undue burden. Here, Plaintiff offers nothing more than a bald assertion that the requested subpoena will "harass" Mr. Klesch. *Cf. Grinnell Corp. v. Hackett,* 70 F.R.D. 326, 333–34 (D.R.I. 1976) (mere allegation that harassment is "more probable than not" is not sufficient to warrant protective order absent concomitant showing that information sought is fully irrelevant and could have no possible bearing on issues). *See also United States v. Miracle Recreation Equipment Co.,* 118 F.R.D. 100, 104 (S.D.Iowa 1987) (objecting party generally required to show both a likelihood of harassment and that information sought is fully irrelevant before party is altogether denied the right to take an individual's deposition).

Moreover, this court is mindful that the discovery procedures in the Federal Rules of Civil Procedures seek to further the interests of justice by minimizing surprise at trial and ensuring wide-ranging discovery of information. *United States ex rel. Schwartz v. TRW, Inc.,* 211 F.R.D. 388 (C.D.Cal.2002). Rule 26(b) permits discovery "regarding any matter . . . that is relevant to the claim or defense of any party" or discovery of any information that "appears reasonably calculated to lead to the discovery of admissible evidence." *See* Fed.R.Civ.P. 26(b)(1). *See also Williams v. Board of County Commissioners,* 192 F.R.D. 698, 702 (D.Kan.2000) (request for discovery should be considered relevant if there is any possibility the information sought may be relevant to a claim or

defense). The Advisory Committee Notes to Rule 26 specifically state that discoverable information may include "other incidents of the same type or involving the same product" or "information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses." At this juncture, the court finds Mr. Mobley's deposition may present relevant information or, at the very least, may lead to the discovery of admissible evidence.

> When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.

*Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208 (D.Kan.2002) (citing *Sheldon v. Vermonty*, 204 F.R.D. 679, 690 (D.Kan.2001)). An objecting party cannot sustain this burden with boilerplate claims that the requested discovery is oppressive, burdensome or harassing. *See St. Paul Reinsurance Company, Ltd. v. Commercial Financial Corp.*, 198 F.R.D. 508, 513 (N.D.Iowa 2000). Without a more compelling showing by Plaintiff Klesch, the court finds that the requested subpoena is consistent with the liberal discovery contemplated by Rule 26 and is, therefore, necessary in the interest of justice.

Plaintiff's objections would be no more persuasive if submitted in the form of a motion for protective order. A court may issue a protective order, pursuant to Fed. R.Civ.P. 26(c), upon a showing of "good cause." However, that standard is not satisfied by conclusory statements. Rather, the party seeking a protective order must show that disclosure will result in a clearly defined and serious injury to that moving party. *Exum v. United States Olympic Committee*, 209 F.R.D. 201, 206 (D.Colo.2002). *See also American Benefit Life Insurance Co. v. Ille*, 87 F.R.D. 540, 543 (W.D.Okl.1978) (party seeking protective order bears the burden of persuasion). Where a protective order would quash a deposition in its entirety, the moving party must show extraordinary circumstances that present a particular and compelling need for such relief. *Bucher v. Richardson Hospital Authority*, 160 F.R.D. 88, 92 (N.D.Tex.1994). *Cf. Ball Corp. v. Xidex Corp.*, 705 F.Supp. 1470, 1473 (D.Colo.1988) (noting the "heavy burden" placed on party requesting order that discovery deposition not proceed). Klesch offers no argument or facts that would satisfy its burden of persuasion under Rule 26(c).

Finally, I note that if Defendant Liberty Media had the ability to serve a deposition subpoena on Warren Mobley pursuant to Fed.R.Civ.P. 45, Klesch would have no standing to object to or challenge that subpoena in the absence of a personal right or privilege. *See Smith v. Midland Brake, Inc.*, 162 F.R.D. 683, 685 (D.Kan.1995). *See also Broadcort Capital Corp. v. Flagler Securities, Inc.*, 149 F.R.D. 626, 628–29 (D.Colo. 1993); *Oliver B. Cannon and Son, Inc. v. Fidelity and Casualty Co. of New York*, 519 F.Supp. 668, 680 (D.Del.1981). I fail to see why Plaintiff should have any greater standing to object where a non-party subpoena is sought under the Walsh Act.

Accordingly, for the foregoing reasons, I find that Defendant Liberty Media has demonstrated that Mobley's deposition is necessary in the interest of justice and that it is not possible to obtain his testimony in admissible form, without Mobley's personal appearance. The court will grant Defendant's motion and issue an order authorizing the issuance of a subpoena directing that Mobley's deposition proceed at a time and place convenient for counsel for the parties and the deponent. Defendant Liberty Media shall tender with the subpoena the sum of $12,000, which is an estimated amount sufficient to cover the deponents estimated necessary travel and attendance expenses. *See* 28 U.S.C. § 1783(b).