**ESTATE OF YARON UNGAR, et al.,**
**Plaintiffs/Judgment–Creditors,**

v.

**The PALESTINIAN AUTHORITY,**
**et al., Defendants/Judgment–**
**Debtors.**

**No. 18MS0302(CM).**

United States District Court,
S.D. New York.

Nov. 7, 2005.

David J. Strachman, McIntyre, Tate, Lynch & Holt, Providence, RI, Robert J. Tolchin, New York, NY, for Plaintiffs.

Ramsey Clark, Ramsey Clark & Lawrence W. Schilling, New York, NY, for Defendants.

Christopher M. Curran, White & Case, LLP, Washington, DC, for Orascom Telecom Holding S.A.E.

DECISION AND ORDER GRANTING IN PART AND DENYING IN PART THE MOTION BY THIRD PARTY ORASCOM TELECOM HOLDINGS TO QUASH OUTSTANDING SUBPOENAS DIRECTED TO ITSELF AND TO OTHER ENTITIES

MCMAHON, District Judge.

## I.  Introduction

Respondents are judgment-creditors of the Palestine Liberation Organization and Palestinian Authority in the amount of $116 million. Pursuant to that judgment, plaintiffs have sought discovery from Orascom Telecom Holdings S.A.E., an Egyptian corporation doing business in the Middle East and North Africa, regarding its debt to the Palestinian Authority's Investment Fund. Orascom has had no prior involvement in this litigation. Several of Orascom's officers traveling in the United States have been served with subpoenas, both personally and as representatives of the corporation. Subpoenas have also been served on United States entities who have done business with Orascom, seeking information on Orascom's jurisdictional contacts with the United States.

Orascom moved to quash all outstanding subpoenas against itself, its officers and directors, and third parties on whom subpoenas have been served, claiming a lack of personal jurisdiction over Orascom, a lack of in rem jurisdiction over any debt Orascom owes to the Palestinian Authority, and undue burden of compliance under Fed.R.Civ.P. 45(c).

For the reasons stated below, all outstanding subpoenas on Orascom are quashed. Subpoenas on Mr. El–Gammal and Mr. Khaliq are not quashed. Orascom's motion to quash the subpoena served on White & Case is granted, but its motion to quash all other third party subpoenas is denied, because Orascom lacks standing to move on their behalf.

## II.  Facts

### A.  Ungar v. Palestinian Authority

The facts and procedural history of the Ungar Estate's suit have been detailed extensively in prior decisions of several courts, and I summarize them here briefly.

In June 1996, Yaron Ungar, a United States citizen, and his wife Efrat were

killed in a drive-by machine gun attack in Israel. Opposition to Motions to Quash by Non–Party Subpoena Recipients Orascom and Bishara ("Bishara Opp.") at 2. The attack was carried out by Hamas operatives. *Id.* In March 2000, the Ungars' estate and their children filed suit against the Palestine Liberation Organization ("PLO"), the Palestinian Authority ("PA"), and certain principal individuals under the Anti–Terrorism Act, 18 U.S.C. 2333(a) (2000), which provides a civil cause of action for United States citizens injured or killed by international terrorism. *Id.* Default judgment against the defendants was subsequently entered on July 13, 2004. *See Ungar & Ungar ex rel. Strachman v. Palestine Liberation Org.,* 325 F.Supp.2d 15 (D.R.I.2004), *aff'd sub nom. Estate of Ungar v. Palestine Liberation Organization,* 402 F.3d 274 (1st Cir.2005). Damages were awarded totaling over $116 million. *See id.* Since that time, the PLO and PA have refused to satisfy the judgment voluntarily. Bichara Opp. at 2

As a result, plaintiffs have sought to levy against PLO and PA assets in the United States, and discover information on the sizable investment holdings and business dealings of the PA around the world. *Id.*

On May 9, 2005, pursuant to 28 U.S.C. § 1963 (2000), the judgment was registered in the Southern District of New York. *Id.* at 3.

## B. Orascom Telecom and the Palestinian Authority

Orascom Telecom Holding S.A.E. ("Orascom") is an Egyptian corporation which provides mobile and satellite telecommunications services in the Middle East, North Africa and Southeast Asia. Its operations are focused on six major markets: Algeria, Pakistan, Bangladesh, Egypt, Iraq and Tunisia. Plaintiff's Opposition to Orascom's Motion to Quash Outstanding Nonparty Subpoenas ("Opposition"), Exhibit K. With a market capitalization estimated at $9 billion, it has been identified as a leading telecommunications provider in "proto-growth markets" in Southeast Asia and the Middle East. *Id.* Orascom operates through numerous wholly and partially owned regional subsidiaries, including Orascom Telecom Algeria ("OTA") and Orascom Telecom Tunisia ("OTT"). Bichara Opp. at 6.

Orascom Telecom Holdings is one of the Orascom family of companies, which includes Orascom Construction Industries, Orascom Hotels and Development, and Orascom Technology Solutions. *See* Standard and Poor's Initial Report on Valuation and Transparency as of January 1, 2003 (Feb. 25, 2003) at 178 (Bichara Opp., Exhibit C) (*hereinafter,* "Initial Report"). These other entities are not involved in the present action.

Between 2001 and 2002, the PA, through its subsidiary the Palestinian Commercial Services Company, acquired shares in OTT and OTA worth up to up to $200 million. Bichara Opp. at 5. On January 1, 2003, the Palestinian Investment Fund ("PIF")—a wholly owned investment arm of the Palestinian Authority—took control of the shares in OTT from the Palestinian Commercial Services Company. Initial Report at 235. The Palestinian Pension Fund, yet another investment arm of the Palestinian Authority, also acquired a smaller number of shares in both OTT and OTA at this time. Bichara Opp. at 6.

According to 2005 press releases, Orascom recently reacquired these shares in OTT and OTA for between $340 million and $360 million. *Id.* In exchange, Orascom paid an unspecified amount of cash up front, with the remainder "partly deferred"—implying some form of debt or note. *Id.* Plaintiffs apparently seek to

garnish this debt in partial or total satisfaction of their judgment.

At present, however, plaintiffs have sought only discovery from Orascom regarding its business dealings with the PA. Towards that end, they have subpoenaed Orascom's officers and directors found within this district, seeking to depose the corporation (and those subpoenaed individually) and compel the production of documents. Specifically, (1) they personally served Khaled Bichara, a board member, while he was present in New York on June 14, 2005 to be sentenced before Judge Preska of the Southern District in an unrelated matter; (2) they sought a judicial order pursuant to 28 U.S.C. § 1783 to compel the testimony of Naguib Sawaris, its chief executive, based on his status as a United States citizen living abroad; (3) they personally served Zouhair Khaliq, its Operations CEO, and Hatim el-Gammal, its Investor Relations Director, while they were present in New York on September 7, 2005 to attend Deutsche Bank's "Global Emerging Markets One–on–One Conference."

Respondents have also served subpoenas on a number of other United States organizations, seeking to depose them regarding their business contacts with Orascom. Specifically, respondents have subpoenaed Comtrack International Inc., a Virginia corporation owned by Orascom's principals; White & Case, Orascom's Unit-

ed States attorneys; and several corporations with whom Orascom allegedly did business—Tyco Telecommunications, the Bank of New York and the David Ross Group.[1] Opposition at 2.

Petitioner Orascom moves to quash all outstanding subpoenas against itself, its officers and directors, and third parties on whom subpoenas have been served, claiming a lack of personal jurisdiction over the corporation, a lack of in rem jurisdiction over any debt owed to the Palestinian Authority, and undue burden under Fed. R.Civ.P. 45(c).

## C. Personal Jurisdiction over Orascom

It is not alleged that Orascom has offices in the United States, provides mobile telecommunications or other products within the United States, or directly owns United States subsidiaries that do business in the United States. Respondent's arguments asserting personal jurisdiction over Orascom are based on its commercial contacts with United States businesses.[2] These contacts, as alleged by respondents, are as follows:

(1) Orascom has made use of United States financial markets by entering into an American Depositary Receipt agreement with the Bank of New York and acquiring certain lines of credit with other New York banks. Opposition at 13–14,

---

1. Independently, respondents have filed a separate complaint in the Southern District of New York against Orascom directly, seeking garnishment of their debt to the Palestinian Authority through a Creditor's Bill. *See Estate of Yaron Ungar et al v. Orascom Telecom Holdings S.A.E. et al.*, No. 05 Civ. 7765 (S.D.N.Y. Sept.2, 2005). By common consent, nothing has happened in that lawsuit.

2. Arguments in favor of and against personal jurisdiction over Orascom and its employees have been raised in a number of briefs before

this Court, including Plaintiff's Complaint against Orascom Telecom (05 Civ 7765), Plaintiff's Motion to Issue a Subpoena to Naguib Sawaris, Orascom Telecom and Khaled Bichara's Motions to Quash Subpoenas served on Mr. Bichara, Orascom Telecom's Motion to Quash Outstanding Nonparty Subpoenas, Plaintiff's Motion to Strike the Declaration of Amr Esmat Abaza, and all related opposition and reply briefs, exhibits and affidavits. This Court considers facts and arguments from all of the above in this decision.

Opposition Exhibit C, Opposition Exhibit H.

(2) Orascom principals have appeared at various business conferences in New York, hosted by leading financial institutions: the "2005 Worldwide Wireless and Wireline Conference" and the "Global Markets One–on–One Conference." At the Worldwide Wireless conference, Mr. Sawaris gave a thirty minute presentation on the history and business strategies of Orascom. Opposition, Exhibit K. It is alleged that Orascom's purpose "was to pitch Orascom and raise capital from the Wall Street investment community." Opposition at 15. Orascom principals also attended the "U.S.-Arab Economic Forum" in Washington, D.C.[3] *Id.*

(3) Orascom has contracted with numerous American suppliers to acquire goods and services related to their telecommunications operations. Specifically, it has contracted with Motorola Inc. to provide "technological infrastructure" for its expanding network in Iraq, Opposition at 17; with Marconi Co.'s Wireless Business Unit to supply "software, wireless consultancy services, training and maintenance support" for its cellular network; with the David Ross Group for the construction of an underseas fiberoptic cable between Europe and North Africa, Opposition at 18; and with Selby Communications for the construction of wireless towers in North Africa (a transaction underwritten by the United States Export–Import Bank, an arm of the United States government);

Opposition at 18–19. Additionally, a joint venture between Orascom and the Saif Group of Pakistan has hired Tyco Telecommunications, a U.S. corporation, to lay fiber-optic cable in the Indian Ocean and Persian Gulf. Opposition, Exhibit T.[4]

(4) Orascom has entered into contractual relationships with United States telecommunications providers. It has entered into roaming agreements with United States telecommunications carriers that enable United States wireless customers to use its Middle–East wireless infrastructure; and it apparently has subcontracted management of a small portion of its Mideast wireless network to LCC International, a Virginia corporation. Opposition at 18–19. In addition, in 2001, Orascom purchased Mobinil, a non-United States subsidiary of Motorola, a United States corporation, for $101 million in cash and debt. Opposition at 19.

(5) Orascom has engaged in limited charitable giving to United States entities, specifically donating $5,000 to the Seeds of Peace Fund. Opposition at 19.

On the basis of these activities, none of which is disputed as a matter of fact except as noted below, respondents seek to assert personal jurisdiction over Orascom before this Court.

## III. Discussion

### A. *Applicable Long–Arm Statute*

The Ungar money judgment was validly registered in this district under 28 U.S.C. § 1963 (2000). This section provides: "A

---

**3.** Orascom principals were recently scheduled to participate in the "U.S.-Arab Economic Forum" in Houston, Texas—the event was cancelled due to Hurricane Katrina. (Letter from Robert J. Tolchin to the Hon. C. McMahon dated Oct. 28, 2005).Orascom has not yet responded to this letter. For the reasons set forth below, this added contact does not affect the jurisdictional analysis.

**4.** Orascom has recently purchased the "Eagle 5 Signaling Platform" from Tekelec, a United States corporation, apparently for its operations in Pakistan. (Letter from Robert J. Tolchin to the Hon. C. McMahon dated Oct. 28, 2005). Orascom has not yet responded to this letter For the reasons set forth below, this added contact does not affect the jurisdictional analysis.

judgment so registered [according to § 1963] shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner." *Id.* The terms of this statute are clear—for purposes of determining the relevant enforcement rules, the Ungar's judgment is treated no differently from any other judgment issued by this Court.

The scope of this Court's power to enforce civil judgments through ancillary enforcement proceedings is set forth in Fed. R.Civ.P. 69:

> ... [t]he procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution, shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable. In aid of the judgment or execution, the judgment creditor... may obtain discovery from any person, including the judgment debtor, in the manner provided in these rules [or pursuant to state law].

Third-party discovery regarding a potential garnishee and the size of an available debt is permitted by the Rule's plain language.

▆ Rule 69 does not, however, specify the jurisdictional reach of the enforcing court. State law regarding the enforcement of judgments, which Rule 69 invokes, does not answer the question of whether this Court has jurisdiction to enter orders of attachment or garnishment or issue third-party subpoenas. *See* CPLR §§ 5225, 5227 (2005) (permitting, respectively, attachment of property and garnishment of future payments). Fed.R.Civ.P. 45, which defines the procedure for the issuance and enforcement of subpoenas

generally, also does not speak to personal jurisdiction issues. Rather, "the subpoena power of a court cannot be more extensive than its jurisdiction." *U.S. Catholic Conf. v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76, 108 S.Ct. 2268, 2270, 101 L.Ed.2d 69, 76 (1988).

Therefore, I look to the general rules of *in personam* jurisdiction in federal question cases. The Second Circuit has held that, "In a federal question case, where the defendant resides outside the forum state, federal courts apply the forum state's personal jurisdiction rules if the applicable federal statute does not provide for national service of process." *Sunward Elecs., Inc. v. McDonald,* 362 F.3d 17, 22 (2d Cir.2004) (citing *PDK Labs., Inc. v. Friedlander,* 103 F.3d 1105, 1108 (2d Cir.1997)).

*PDK Labs* requires the application of the New York long-arm statute. This conclusion is supported by the weight of authority—when enforcing a judgment under Rule 69, federal courts have not applied broader jurisdictional reach than state enforcement provisions would otherwise allow. *See Mones v. Comm. Bank of Kuwait,* No. 18 MS 0302, 2005 WL 1653930, *3–*4 (S.D.N.Y. July 12, 2005) (looking to New York law for enforcement order targeted at foreign third-party bank); *Rodd v. Region Constr. Co.,* 783 F.2d 89, 91 (7th Cir.1986); *see also Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,* 313 F.3d 70 (2d Cir.2002) (applying New York banking rules in enforcement of judgment under Federal Arbitration Act); *Textile Banking Co. v. Rentschler,* 657 F.2d 844, 852 (7th Cir.1981); *Gabovitch v. Lundy,* 584 F.2d 559, 561 (1st Cir.1978). I thus conclude that the appropriate measure of personal jurisdiction in this matter is the reach of New York's long-arm statute.

■ Respondents argue that the appropriate measure of this Court's jurisdiction is that of the Anti–Terrorism Act ("ATA"), which provided the statutory basis for recovery in the district court in Rhode Island and which permits nationwide service of process. *See* 18 U.S.C. § 2334(a) (2000), *accord* 15 U.S.C. § 78aa (2000) (equivalent language in the 1934 Exchange Act providing nationwide service of process). If a federal statute provides for nationwide service of process, the jurisdictional reach of an enforcing court is at its fullest—its analysis is limited only by the requirements of due process, and it may consider a party's contacts with the United States as a whole, rather than with the forum state. *See Mariash v. Morrill*, 496 F.2d 1138, 1142–1143 (2d Cir.1974). Therefore, a summons and complaint, or for that matter a subpoena, brought under the ATA could reach any party whose contacts with the United States as a whole satisfied due process. Respondent argues that the ATA's jurisdictional reach should extend to all ancillary enforcement proceedings as well. Opp. at 7.

However, this proceeding is not brought under the ATA. Nor does the ATA contain any supervening provisions related to enforcement of judgments that would command this Court to apply its wider jurisdictional reach to ancillary Rule 69 proceedings against third parties. *Cf. Peacock v. Thomas*, 516 U.S. 349, 353, 116 S.Ct. 862, 866, 133 L.Ed.2d 817, 824 (1996) (finding no provision in ERISA imposing liability against a third party for a judgment.).

### 1. In Rem Jurisdiction Over the Debt Is Not Required

Orascom argues that the subpoenas directed to it and its officers should be quashed because no judgment has been entered against the parties alleged to be entitled to payments from Orascom—the Palestinian Investment Fund and the Palestinian Pension Fund. The Second Circuit has held that a judgment may not be enforced against third parties' subsidiaries such as the PPF or PIF, absent strong evidence of corporate impropriety. *See Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 61–62 (2d Cir.2004), *cert. denied,* —— U.S. ——, 125 S.Ct. 2270, 161 L.Ed.2d 1080 (2005).

Orascom further argues that this Court must have *in rem* jurisdiction over the debt owed to the PIF in order to enforce the subpoenas under Rule 69. The parties have extensively argued the issue of whether the PA–Orascom obligation constitutes "debt" (requiring only personal jurisdiction over the debtor) or "property" (requiring *in rem* jurisdiction over the item) for purposes of New York enforcement law. Motion to Quash Outstanding Non–Party Subpoenas at 10; Opposition at 22.

■ It is not necessary to reach these issues. Rule 69 gives judgment-creditors broad power to take discovery in aid of enforcement proceedings, and whether this Court can garnish debts owed to the PIF or PPF is not material at this stage. The only issue for decision is whether the subpoenas that would entitle plaintiff to take discovery are valid and enforceable.

### 2. Orascom Has Been Served with Process

The Second Circuit has held that the Federal Rules of Civil Procedure "govern" the enforcement of judgments under Rule 69, and therefore take precedence over New York law where applicable. *See Schneider v. Nat'l R.R. Passenger Corp.,* 72 F.3d 17, 19–20 (2d Cir.1995) (quashing service of process which followed state law but was not in compliance with Fed R. Civ. P. 4); *see also United States for the Use of*

*Tanos v. St. Paul Mercury Ins. Co.*, 361 F.2d 838 (5th Cir.1966).

Federal Rule of Civil Procedure 4(h) permits service on corporations as authorized by state law, or by hand delivery of a summons, or subpoena, to an officer or managing agent of the corporation. *See id.*

On September 7, 2005, a subpoena addressed to Orascom was hand-delivered to Mr. Zouhair Khaliq, Operations CEO of Orascom, who was present in New York to attend a conference when served. Petitioner admits that Khaliq is an officer of Orascom. Therefore, the September 7 service of process complies with the requirements of the Federal Rules, and service was effected.

### 3. Long–Arm Personal Jurisdiction

■ Service of a subpoena, even if properly effected, is only *valid* if served on a party who is subject to personal jurisdiction within this district. The Due Process Clause of the Fourteenth Amendment limits the exercise of personal jurisdiction to persons having certain "minimum contacts" with the forum. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). A court may exercise personal jurisdiction only over a defendant whose "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)).

■ In addition, Rule 69 requires the application of the New York long-arm statute, N.Y. CPLR § 301, which further limits this Court's jurisdictional reach. CPLR § 301 permits a court to exercise general jurisdiction over foreign corporations, so long as they are "doing business" within the state. *See Wiwa v. Royal Dutch Petroleum, Co.*, 226 F.3d 88, 95 (2d Cir.2000). Such activities must constitute "continuous, permanent, and substantial activity in New York." *Id.* (citing *Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990)). General jurisdiction must be shown in this case because the jurisdictional contacts alleged by plaintiffs have nothing to do with the Ungars or the debt allegedly owed by Orascom to the PA. Therefore, there is no basis for finding specific or transactional jurisdiction under CPLR § 302.

In order to prevail prior to an evidentiary hearing, the judgment-creditors must make a prima facie showing of jurisdiction over the petitioners. *See Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 186 (2d Cir.1998). If they cannot make out a prima facie case for personal jurisdiction, they cannot take any discovery—even jurisdictional discovery—from a foreign corporation. *See id.* at 185–86. "If the court chooses not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981). The Court will "construe jurisdictional allegations liberally and take as true uncontroverted factual allegations." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir.1994).

### 4. Orascom's Jurisdictional Contacts

#### (i) New York Financial Services Contacts

Orascom instituted an American Depositary Receipt (ADR) program in New York for the purpose of raising money from U.S.

capital markets.[5] It has previously been held that having securities listed on a New York exchange, or transacting in private placements of commercial paper when such placements are made only to a limited group of buyers, is insufficient to confer general jurisdiction over the seller. *See Nordic Bank PLC v. Trend Grp. Ltd.,* 619 F.Supp. 542, 565–67 (S.D.N.Y.1985). In *Nordic Bank,* such placements were insufficient even where "the sale of commercial paper is an essential aspect of the Nordic defendants' business." *Id.* at 566. *Nordic Bank* is analogous to the case at bar— Orascom's sale of ADRs was a one-time, limited placement of its own securities with the Bank of New York.

Respondents also allege that Orascom has acquired lines of credit from New York commercial banks, *see* Opposition Exhibit H, and have solicited investment at various conferences held within New York State. Opposition Exhibits I–K. However, acquiring a line of credit or funding, without more, has been held not to constitute "doing business" within New York for purposes of the New York long-arm statute. *See Mende v. Milestone Tech., Inc.,* 269 F.Supp.2d 246, 254 (S.D.N.Y.2003) (holding a $225,000 loan insufficient to create a jurisdictional contact to New York). In this case, respondents have only alleged that Orascom acquired a "$200 million syndicated loan" from Chase and Citigroup. While this loan facility is significantly greater than the loan considered in *Mende,* it nevertheless does not constitute a "continuous, permanent, and substantial" activity, as required by *Landoil,* sufficient to confer general jurisdiction.

### (ii) Business Conferences

■■■ In the past two years, Orascom officers have attended business conferences in New York and Washington D.C. To support general jurisdiction in New York, "occasional or casual presence or isolated transactions do not suffice." *Miller v. Calotychos,* 303 F.Supp.2d 420, 428 (S.D.N.Y.2004) (*citing Landoil,* 918 F.2d at 1043). While isolated meetings, including attendance at business conferences, have been found to confer specific jurisdiction under CPLR § 302(a) (*Miller,* 303 F.Supp.2d at 427), attendance at such conferences generally does not constitute "doing business" in New York for general jurisdictional purposes. This case is no exception—attendance by Orascom officers at two transient business conferences, each open to anyone interested in their content, is not so "continuous or permanent" a presence as to confer general jurisdiction over Orascom. In addition, there is no evidence in the record that Orascom was attempting to sell its services or otherwise transact specific business at these conferences. A review of Mr. Sawaris' comments at the Worldwide Wireless Conference indicates that Orascom's business efforts were focused on the Middle East, Africa and Europe, not the United States. See Opposition Exhibit K.

### (iii) United States Purchases

Respondents have argued that Orascom's acquisitions of goods and services from United States suppliers suffices to confer general jurisdiction.[6] It is not al-

---

5. ADRs are American securities backed by stock (or other securities) issued by a foreign entity. They serve as a ready means for foreign entities to access United States capital markets without complying with S.E.C. requirements for a public offering.

6. Orascom argues that some of these purchases were made by its subsidiaries, through foreign, rather than American, entities. Opposition to Plaintiff's Motion to Strike Declaration or Examine Declarant at 4–6 ("Azaba Opposition"). Because I find that the pur-

leged that these transactions were for goods or services to be used, sold, or held within the United States. Nor is it alleged that these contracts were made in New York, or with New York companies. However, even considering all transactions within the United States as a whole, they do not constitute significant jurisdictional contacts.

While the due process clause requires minimum contacts with a forum, not all contacts carry jurisdictional significance. In *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404, (1984), plaintiffs brought a wrongful death suit against a Colombian company whose contacts with Texas, the forum state, had been limited to contract negotiations in Texas by the head of the company, purchases of goods in Texas with payment made to a New York bank, and subsequent trips by other company personnel to Texas for training. The Court reaffirmed the validity of *Rosenberg Bros., & Co. v. Curtis Brown Co.,* 260 U.S. 516, 43 S.Ct. 170, 67 L.Ed. 372 (1923), in which regular trips to a forum state did not render defendant amenable to general jurisdiction there, when the trips were solely to purchase goods for an out-of-state business. *See Helicopteros,* 466 U.S. at 418, 104 S.Ct. 1868, 80 L.Ed.2d 404. Such "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Id.; accord Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG,* 160 F.Supp.2d 722, 733 (S.D.N.Y.2001); *Grossman v. Wal–Mart*

*Stores, Inc.,* 682 F.Supp. 752, 754 (S.D.N.Y.1988).

The contacts alleged by respondents have much in common with the facts of *Helicopteros.* Orascom is a purchaser of goods and services for use in its overseas business only. It does not maintain a presence in the United States, and generates no sales or other trade, apart from these purchases, in its dealings with United States companies. In addition, these contracts—one for telecommunications towers in Egypt, one for cabling in the Indian Ocean, and so forth—do not appear to constitute a regular course of business. Rather, they are infrequent capital projects to satisfy particular requirements. Under New York's CPLR § 301, and under the due process standard set out in *Helicopteros,* such purchases are insufficient.

*(iv) Contracts with United States Companies.*

In addition to sales of goods and services, Orascom has established several long-term contracts with United States businesses—setting up roaming agreements with United States wireless operators and subcontracting part of its network management to a United States corporation.[7] None of these contracts is with a New York entity. In addition, these agreements are solely for the provision of services outside the United States—therefore, these contracts do not constitute "doing business" in New York for purposes of CPLR § 301. Petitioner cannot be subjected to general jurisdiction in New York, or even the United States as a whole,

---

chases, in and of themselves, are jurisdictionally insufficient, I do not rely on these assertions.

**7.** Roaming agreements, although rarely addressed, have not conferred general jurisdic-

tion on the parties. *See New Comm. Wireless v. SprintCom, Inc.,* 213 F.Supp.2d 61, 64 (D.Puerto Rico 2002) (finding that roaming service agreement does not constitute sufficient contact for general jurisdiction).

based on occasional contracts to provide services outside of the United States.[8]

### (v) Charitable Giving

Only one charitable donation by Orascom to a United States charity has been identified: a gift of $5,000 to "Seeds of Peace," a non-profit headquartered in New York that operates a camp for young people from war-torn areas around the world. Providing funding, without more, does not support a finding of general jurisdiction. *See In re Ski Train Fire in Kaprun, Austria,* 343 F.Supp.2d 208, 216 (S.D.N.Y. 2004). In this case, Orascom's minor, one-time donation to a United States charity does not constitute sufficient grounds to support personal jurisdiction in New York.

### (vi) Conclusion

The total of Orascom's contacts with the United States is insufficient to satisfy the requirements of due process. In *Helicopteros,* the Supreme Court stated that contacts with the United States must constitute a "continuous and systematic" relationship with the forum in order to satisfy the Due Process Clause. 466 U.S. at 416, 104 S.Ct. 1868; *cf. Perkins v. Benguet Consol. Min. Co.,* 342 U.S. 437, 447–48, 72 S.Ct. 413, 419, 96 L.Ed. 485 (1952) (finding personal jurisdiction where a corporation maintained an office, held directors meetings, and managed a foreign business from Ohio); *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 779–80, 104 S.Ct. 1473, 1480–81, 79 L.Ed.2d 790 (1984) (finding personal

jurisdiction where magazine sold up to 15,-000 copies per month in forum state). Respondent has not made a prima facie case that Orascom meets that threshold. Without a presence in New York (or the United States as a whole), sales or operations in the United States, or other relevant and systematic jurisdictional contacts, Orascom's isolated purchases and occasional travel in the United States are not sufficient to subject it to jurisdiction here.

### B. Service on Orascom under Fed. R.Civ.P. 4(k)(2)

Respondents argue that personal jurisdiction attached under Fed.R.Civ.P. 4(k)(2), which permits service of a summons "with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state," provided such service is consonant with due process. Opp. at 8, n. 5. The purpose of this broad rule is to guarantee the reach of Federal law to wrongdoers whose contacts with any particular forum are insufficient to satisfy state due process. *See* 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1124 (3d ed.2002). Respondent's argument, however, fails because the statute limits its reach to *defendants.* No federal claim has been asserted against Orascom. The rule simply does not apply to third-party subpoenas.[9]

---

**8.** Orascom argues that some of these contracts were made with its subsidiaries. Opposition to Motion to Strike Declarant at 6–7. New York law states that a foreign parent corporation is not present merely because of the activities of its subsidiaries. *See Jazini,* 148 F.3d at 184 (*citing Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,* 751 F.2d 117, 120 (2d Cir.1984)). Because these contracts do not constitute sufficient jurisdic-

tional contacts, I do not reach the issue of whether these subsidiaries are entities distinct from Orascom itself.

**9.** I am not today deciding whether this Court has personal jurisdiction over Orascom under Plaintiff's independent complaint seeking a creditor's bill. The analysis, however, would be much the same.

*C. Service on Orascom Officers*

■ In addition to serving Orascom itself, respondents have subpoenaed Mr. el-Gammal and Mr. Khaliq in their personal capacities.[10] A determination that Orascom is not subject to the personal jurisdiction of this Court does not necessarily immunize these two individuals from personal service, as the personal jurisdiction analysis for individuals is not the same as that for corporations.

Under Fed.R.Civ.P. 4(e)(2), personal service of process on an individual voluntarily within a district of the United States is valid service within that district. Furthermore, "tag" jurisdiction—personal service on an individual within the state—remains a valid method of acquiring personal jurisdiction over an individual, though not over a corporation through the persons of its officers. *See Burnham v. Superior Court of Cal.,* 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990); *see also Kadic v. Karadzic,* 70 F.3d 232, 247 (2d Cir.1995) (upholding "tag" service of process on non-U.S. citizen temporarily present in New York). The outstanding issue is whether such an exercise of tag jurisdiction is constitutionally permissible to bind a non-party through a subpoena.

The Second Circuit has taken the position that a subpoena is valid when a third party individual is personally served while found within the district of the issuing court. The leading case is *First American Corp. v. Price Waterhouse LLP,* 154 F.3d 16 (2d Cir.1998), in which a U.K.-based partnership was served with a subpoena through one of its partners who was temporarily visiting New York (whose long-arm statute permits personal jurisdiction over a partnership if one partner is found within the state). *See id.* at 18. The court

found that tag jurisdiction, whose validity as to defendants was established in *Burnham,* was equally applicable to third-party subpoenas. *See First Am. Corp.,* 154 F.3d at 20 ("a person who is subjected to liability by service of process far from home may have better cause to complain of an outrage to fair play than one similarly situated who is merely called upon to supply documents or testimony").

*Price Waterhouse* was reaffirmed by *In re Edelman,* 295 F.3d 171 (2d Cir.2002), in which a French citizen and domiciliary was served with a subpoena pursuant to 28 U.S.C. § 1782(a) (permitting subpoenas to be issued by federal courts in support of foreign litigation) while briefly present in New York. The Second Circuit again upheld personal jurisdiction over the nonresident, citing *Burnham* and *Price Waterhouse. See Edelman,* 295 F.3d at 179. Although the court did not rule as to whether the convenience of the deponent would warrant quashing or modifying the subpoena under Fed.R.Civ.P. 45(c)(3), it is clear that such service is jurisdictionally proper. *See id.* at 181; *cf. In re Application for Order Quashing Deposition Subpoenas,* 2002 WL 1870084 (S.D.N.Y. Aug.14, 2002).

In this case, there has been no objection to the means of service on Mr. Khaliq or Mr. el-Gammal, nor does service appear improper. This distinguishes their situation from that of Mr. Bichara, who was served while present in the United States for sentencing. *See Ungar v. Palestinian Auth.,* 396 F.Supp.2d 376, 377 (S.D.N.Y. 2005). Mr. Khaliq and Mr. el-Gammal were voluntarily present within the district to attend a conference, and were served while within the Southern District. There

10. Mr. Khaled Bichara was also personally served by respondents. That subpoena has already been quashed by this Court. *See Un-*

*gar v. Palestinian Auth.,* 396 F.Supp.2d 376 (S.D.N.Y.2005).

are no obvious grounds for quashing, rather than modifying, the subpoenas under Rule 45(c) before this Court. I decline to quash them. They are, I note, directed to these individuals as individuals—they are not service on the corporation.

### D. Additional Non–Party Subpoenas

Orascom has also moved to quash subpoenas on the Bank of New York, White & Case, Comtrack, Tyco Telecommunications, and the David Ross Group regarding their business dealings with Orascom. Respondent argues that Orascom lacks standing to object to such subpoenas.

■ "In the absence of a claim of privilege, a party usually does not have standing to object to a subpoena directed to a non-party witness." *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir.1975), *accord Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir.1979). Except as to White & Case, Orascom has not raised any such claims of evidentiary privilege. Therefore, it lacks standing to object to those subpoenas.

■ As to White & Case, the excessive number of documents requested, the unlikelihood of obtaining relevant information, and the existence of attorney-client privilege for all documents, confers standing on Orascom and impels me to quash, rather than modify, the subpoena under Fed.R.Civ.P. 45(c).[11] *See also Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 51 (S.D.N.Y.1996). Therefore, the subpoena on White & Case is quashed. Orascom's motion to quash all other third-party subpoenas is denied for lack of standing.

---

11. Respondents did attempt to limit their subpoenas to exclude documents covered by attorney-client privilege. See Motion to Quash,

### IV. Conclusion

For the reasons given above, subpoenas issued to Orascom and White & Case are quashed. The motion to quash as to all other subpoenas is denied. Discovery is referred to the magistrate judge for resolution of remaining issues.

This constitutes the decision and order of this Court.

Exhibit C. Such boilerplate language, however, does not render the subpoena immune to challenge from Orascom.