The ESTATE OF YARON UNGAR, et al., Plaintiffs/Judgment–CreditorsPetitioners,

v.

The PALESTINIAN AUTHORITY, et al., Defendants/Judgment–Debtors

v.

Naguib Sawiris Nonparty–Respondent

No. 18 MS 0302 CM LMS.

United States District Court, S.D. New York.

Jan. 5, 2006.

### DECISION and ORDER

LISA MARGARET SMITH, United States Magistrate Judge.

Nonparty–Respondent Naguib Sawiris (herein, "Respondent") moves this Court to quash a subpoena requested by Plaintiffs–Petitioners Estate of Ungar, et al. (herein, "Plaintiffs") pursuant to 28 U.S.C. § 1783 seeking both Respondent's personal testimony and the production of corporate documents for the purposes of establishing personal jurisdiction over Orascom Telecom Holding S.A.E. (herein, "Orascom"). For the following reasons, I deny Respondent's motion to quash and issue the requested subpoena. The subpoena, however, shall only compel the testimony of Respondent as named in his individual capacity; it does not compel the production of corporate documents in Respondent's possession by virtue of his position as Chairman of Orascom.

### INTRODUCTION

The primary dispute from which this motion derives has a long and complex history of epic proportions. Though the precise history of the case is largely irrelevant for the purposes of deciding the Respondent's motion to quash, a brief summary of the procedural history and facts is nonetheless required for the purposes of clarity and completeness. On November 8, 2005, the Honorable Colleen McMahon, United States District Court Judge, referred this case to me for General Pretrial supervision, which includes discovery disputes such as the present issue involving the issuance of a nonparty subpoena and the responding motion to quash.

### A. FACTS & PROCEDURAL HISTORY

The facts of this case have been stated and re-stated by numerous courts, and for the purposes of consistency, the facts recited herein are drawn from those sources.

Yaron Ungar, a United States citizen, and his wife, Efrat, an Israeli citizen, were murdered in Israel on June 9, 1996. Memorandum of Law in Support of Plaintiffs' Motion for a Subpoena Pursuant to 28 U.S.C. § 1783 (herein, "Mem.") at 1. Plaintiffs are the orphaned children of Yaron and Efrat Ungar. *Id.* Plaintiffs assert that the decedents' murder was a part of an international act of terrorism orchestrated by the Palestinian Authority. Mem. at 1–2. Plaintiffs filed suit in the United States District Court for the District of Rhode Island on March 13, 2000, under the Antiterrorism Act, 18 U.S.C. § 2331, *et seq.*, against The Palestinian Authority, et al. (herein, "Defendants"), alleging that Yaron Ungar was murdered during such an act of international terrorism. Mem. at 2; *Estates of Ungar v. The Palestinian Authority. et al.*, 153 F.Supp.2d 76, 83 (D.R.I.2001) (herein, "Ungar I"). After a protracted pretrial period riddled with jurisdictional disputes and sundry motions, default judgment was entered against the Defendants on July 13, 2004, in the District of Rhode Island, *see* Mem. at 2; *Estates of Ungar & Ungar v. Palestinian Authority*, 325 F.Supp.2d 15 (D.R.I.2004) (herein, "Ungar II") (detailing pretrial disputes and entering default judgment in

favor of Plaintiffs), and subsequently was upheld on appeal by the First Circuit Court of Appeals, *see Ungar v. Palestine Liberation Organization*, 402 F.3d 274 (1st Cir.), *cert denied*, —— U.S. ——, 126 S.Ct. 715, 163 L.Ed.2d 575 (2005). On May 9, 2005, unable to collect on the default judgment in the District of Rhode Island, the Plaintiffs, pursuant to 28 U.S.C. § 1963, registered the judgment in the Southern District of New York. Mem. at 4.

Since registering their default judgment in this District, Plaintiffs have sought information from several nonparties in an effort to establish this Court's jurisdiction over the Defendants' debts and assets and thus use such funds to satisfy the outstanding default judgment. In particular, Plaintiffs assert that Orascom, an Egyptian telecommunications company, owes the Defendants "at least tens of millions of dollars, and probably well over a hundred million dollars," based upon a buyback of its stock, and that of its subsidiaries, from the Defendants. Mem. at 7. Plaintiffs aver this buyback purchase price was "partly deferred," and that as a result, Orascom is indebted to the Defendants. *Id.*

Plaintiffs have attempted—albeit unsuccessfully—to establish this Court's personal jurisdiction over Orascom. In one instance, the Plaintiffs personally served Khaled Bichara, a director of Orascom, while present within this District for an unrelated criminal sentencing proceeding. *Estate of Yaron Ungar, et al. v. The Palestinian Authority, et al.*, 396 F.Supp.2d 376 (S.D.N.Y.2005) (herein, "Ungar III"). Judge McMahon held, however, that the Plaintiffs could not use "tag jurisdiction" to acquire personal jurisdiction over a nonparty witness present within the District for an unrelated criminal proceeding. *Ungar III*, 396 F.Supp. at 381 82. At that time, Judge McMahon also determined that personal service on Mr. Bichara was insufficient to establish personal jurisdiction over Orascom. *Id.* Subsequently, Judge McMahon quashed a subpoena served on Mr. Zouhair Khaliq, Operations CEO of Orascom, which was served on him in his official capacity in an effort to acquire jurisdiction over Orascom. *Estate of Yaron Ungar v. Palestinian Authority, Ungar IV*, 400 F.Supp.2d 541, 551–52 (S.D.N.Y.2005). Judge McMahon determined that Plaintiffs had not established that Orascom had the requisite minimum contacts needed to establish personal jurisdiction over that company in the Southern District of New York. *Id.* at 551–52. Judge McMahon also held that Orascom was not subject to personal jurisdiction under FED. R. CIV. P. 4(k)(2) by virtue of service on Mr. Khaliq because Orascom was a third-party to the action, not the named defendant. *Id.* at 552–53. Subpoenas served on Mr. Khaliq and Mr. Hatim el-Gammal, a director of Orascom, in their respective individual capacities, however, were upheld by Judge McMahon. *Id.* at 553–54.

Plaintiffs now seek additional information about Orascom's business dealings in an ostensible effort to re-litigate whether this Court has personal jurisdiction over Orascom. Plaintiffs wish to obtain this information by way of a subpoena over Orascom's Chairman, nonparty-respondent Sawiris, via 28 U.S.C. § 1783.

Section 1783 authorizes the issuance of a subpoena for the testimony of or production of documents by an American citizen residing outside of the territorial jurisdiction of the United States when such an issuance is in the "interest of justice." Respondent does not argue that he is exempt from the application of the statute. Respondent posits, however, that this Court should not issue the subpoena for several reasons. First, Respondent believes the Plaintiffs are using this Court, and its accompanying discovery authority, for the sole purpose of furthering its parallel state

court enforcement proceeding. Memorandum in Support of Nonparty Naguib Sawiris' Opposition to Plaintiff's Motion for a Subpoena Pursuant to 28 U.S.C. § 1783 (herein, "Opp.") at 1–7. Second, Respondent argues that because the Court lacks personal jurisdiction over Orascom, it cannot issue a subpoena compelling Respondent's testimony. Opp. at 7–12. Third, Respondent submits that the Order to Show Cause, issued by The Honorable Laura Taylor Swain, United States District Judge for the Southern District of New York, on August 24, 2005, was not properly served on him in accord with the FED. R. CIV. P. 4(f)(1). Finally, Respondent argues, *arguendo*, that the Plaintiffs have not provided sufficient evidence to meet the "interest of justice" standard required by § 1783 for the issuance of a subpoena.

For the following reasons, I conclude that the Plaintiffs have met the required "interest of justice" showing needed to issue the subpoena over Respondent pursuant to § 1783, and that the other objections raised by the Respondent are without merit. The subpoena issued, however, applies to Respondent only in his personal capacity as an American citizen, and does not require the Respondent to comply with the Plaintiffs' requested production of corporate documents relating to Orascom business transactions, where Orascom is not within this Court's jurisdiction.

## DISCUSSION

### A. *Dual Federal and State Court Enforcement Proceedings Do Not Require Suspension of the Federal Discovery Process*

Respondent argues that Plaintiffs have moved for the issuance of the subpoena pursuant to § 1783 for the sole purpose of aiding their parallel state court enforcement proceeding Opp. at 2–7. As noted by the Respondent, the Plaintiffs are pursu-

ing enforcement of the default judgment issued by the District Court for the District of Rhode Island through several legal avenues, including registering the default judgment in both this District and in the Supreme Court of the State of New York, County of New York. Opp. at 3. Plaintiffs have since petitioned that court to stay its proceedings until this motion, and any other outstanding discovery disputes, are determined by this Court. Opp., Ex. B.

Plaintiffs are not prohibited from maintaining parallel federal and state causes of action. *See e.g., Kline v. Burke Construction Company,* 260 U.S. 226, 230–31, 43 S.Ct. 79, 67 L.Ed. 226 (1922) ("The rule, therefore, has become generally established that where the action first brought is *in personam* and seeks only a personal judgment, another action for the same cause in another jurisdiction is not precluded.") (citations omitted); *McClellan v. Carland,* 217 U.S. 268, 282, 30 S.Ct. 501, 54 L.Ed. 762 (1910) ("the pendency of an action in state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction, for both the state and federal courts have certain concurrent jurisdiction ...."). In fact, several courts have opined that filing concomitant state and federal proceedings in an effort to satisfy an outstanding default judgment may be the most prudent course of action. *See Meridian Investing & Development Corp., v. Suncoast Highland Corp.,* 628 F.2d 370, 372–73 (5th Cir.1980); *Edmonston v. Sisk,* 156 F.2d 300, 303–04 (10th Cir.1946). The incidental effects the federal discovery process may have on the parallel state court enforcement proceeding does not counsel for its suspension. *See Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp.,* 88 Civ. 3039(ILG), 1993 WL 50528, at *2 (E.D.N.Y. Feb. 23, 1993) ("the fact that plaintiff has commenced proceedings in the New York

State courts to enforce the federal judgment does not preclude this court [the United States District Court for the Eastern District of New York] from granting discovery.").

Thus, the Plaintiffs' maintenance of parallel federal and state court enforcement proceedings does not persuade this Court to suspend its discovery proceedings.

### B. *This Court Need Not Have Personal Jurisdiction Over Orascom to Issue a Subpoena to Mr. Sawiris in His Personal Capacity as an American Citizen*

■ Respondent argues that because this Court lacks personal jurisdiction over Orascom, this Court cannot issue a subpoena compelling Respondent to testify at deposition or to produce corporate documents relating to Orascom's business transactions. The Respondent is correct that absent Orascom being subject to the personal jurisdiction of this Court, the Respondent cannot be forced to produce corporate documents detailing Orascom's business dealings or transactions. *See In re Sealed Case*, 832 F.2d 1268, 1272–73 (D.C.Cir.1987) (the party seeking the production of corporate documents must demonstrate "that the District Court has personal jurisdiction over ... [the company] in order to secure a valid order directing the production of [the company's] records."). In light of Judge McMahon's prior decision that this Court does not have personal jurisdiction over Orascom, *Ungar IV*, at 551–52, Respondent cannot be compelled to produce the requested corporate documents via the § 1783 subpoena.

The Respondent's argument that he cannot be compelled to testify in his personal capacity because of an absence of personal jurisdiction over Orascom, however, is not convincing in light of the textual directive of 28 U.S.C. § 1783. Section 1783 specifically empowers a court to issue a subpoena compelling the testimony of a United States citizen outside of the territorial jurisdiction of the United States by virtue of his or her citizenship. Section 1783(a) states in relevant part:

A court of the United States may order the issuance of a subpoena requiring the appearance as a witness before it ... of a national or resident of the United States who is in a foreign country ... if the court finds that particular testimony ... is necessary in the interest of justice, and ... that it is not possible to obtain his testimony in admissible form without his personal appearance ....

Section 1783(b) mandates, *inter alia*, that the subpoena be served in accord with the Federal Rules of Civil Procedure and that the serving party pay the necessary travel costs of the witness, which are to be determined by the court.

A plain reading of the statute's text makes clear that whether this Court has personal jurisdiction over Orascom is irrelevant for purposes of determining whether it is in the interest of justice to compel a United States citizen, living in a foreign country, to be available for a court-ordered proceeding. Pursuant to the Supreme Court's holding in *Blackmer v. United States*, § 1783(a) establishes the requisite personal jurisdiction over a United States citizen living outside of the jurisdiction of the United States to substantiate a valid subpoena for his or her testimony. 284 U.S. 421, 438, 52 S.Ct. 252, 76 L.Ed. 375 (1932) (concluding that § 1783 comports with due process by giving a citizen living abroad notice and an opportunity to challenge such a subpoena). Accordingly, Respondent, an American citizen, can be subpoenaed to testify in his personal capacity at deposition pursuant to § 1783 regardless of whether this court has personal jurisdiction over Orascom. *See id.* ("The jurisdiction of the United States over its

absent citizen ... is a jurisdiction *in personam,* as he [or she] is personally bound to take notice of the laws that are applicable to him and to obey them.") (citation omitted). The logical corollary, explained *supra,* is that the Respondent cannot be compelled to produce corporate documents or other material only in his possession by virtue of his official capacity as Chairman of Orascom. *See In re Sealed Case,* 832 F.2d 1268, 1272–73 (D.C.Cir.1987).

Simply because the Respondent may be subpoenaed under § 1783 does not mean that he must be subpoenaed. In order for this Court to issue the requested subpoena under § 1783, the Plaintiffs must still demonstrate that the subpoena's issuance is in the "interest of justice."

### C. *Plaintiff Has Established the "Interest of Justice" Standard for Issuing a Subpoena Pursuant to Section 1783*

The standard enumerated in 28 U.S.C. § 1783(a) for the issuance of a subpoena on a United States citizen living outside of the territorial jurisdiction of the United States is whether the subpoena is "necessary in the interest of justice." In addition, the court must find that "it is not possible to obtain [the desired] testimony in admissible form without [the individual's] personal appearance ...." 28 U.S.C. § 1783(a).

 There is a surprising shortage of pertinent case law involving the issuance of a subpoena under § 1783. The sporadic case law pertaining to this statutory provision supports the notion that the courts have the inherent authority to manage and oversee the discovery process, and that it is in the sound discretion of the court to issue the necessary subpoenas in an effort to minimize surprise and unearth relevant information. *See In re Thompson,* 213 F.Supp. 372, 374 (S.D.N.Y.1963), *rev'd on other grounds.*

The most thorough discussion of § 1783's "interest of justice" standard is found in an opinion authored by the Honorable Craig B. Shaffer, United States Magistrate Judge for the District of Colorado. *See Klesch & Company Limited v. Liberty Media Corp., et al.,* 217 F.R.D. 517 (D.Colo.2003). In *Klesch,* Magistrate Judge Shaffer issued a subpoena pursuant to § 1783, requested by the Defendants, compelling the testimony of a third party in a fraudulent contract cause of action. In his opinion, Magistrate Judge Shaffer concluded that "the 'interest of justice' element must be considered in light of the circumstances of the particular case and, more importantly, the posture of the case when the issue arises." *Klesch,* 217 F.R.D. at 523. In addition, the court noted that the predicate theory of federal pretrial discovery—the production of relevant material essential for the full and fair litigation of a cause of action—supported the issuance of the subpoena. *Id.* at 524.

The legislative history of § 1783 bolsters the standard articulated by the *Klesch* court. Originally passed by Congress in 1926 as a measure to ensure the return of material witnesses involved in the Teapot Dome scandal, *see United States v. Thompson,* 319 F.2d 665, 668–69 (2d Cir.1963), § 1783 was intended to empower the courts with the authority to subpoena witnesses who were crucial to a criminal proceeding, but were otherwise outside the territorial reach of the judicial system, *id.*[1] Section 1783's legislative history explains that when considering the propriety of the issuance of a subpoena under § 1783, the court should consider a

---

**1.** 28 U.S.C. § 1783 was subsequently amended in 1964 to apply to all proceedings, not just criminal proceedings.

multitude of factors, including "the nature of the proceedings, the nature of the testimony or evidence sought, the convenience of the witness or the producer of the evidence, the convenience of the parties, and other facts bearing upon the reasonableness of requiring a person abroad to appear as a witness ...." *See* S. REP. No. 88–1580, at 10 (1964), *reprinted in* 1964 U.S.C.C.A.N. 3782, 3791 (legislative history of predecessor section to 28 U.S.C. § 1783). The essence of the legislative history is clear: the courts have the power to subpoena a United States citizen outside the jurisdiction of the United States when a "compelling reason" exists. *Id.* The Supreme Court relied upon this very principle when it upheld the constitutionality of the predecessor section to § 1783 in *Blackmer.* 284 U.S. at 438, 52 S.Ct. 252.

■ Considering the totality of the circumstances assessment posited by the *Klesch* court, as well as the legislative history of § 1783, I find that it is in the "interest of justice" to issue the subpoena pursuant to § 1783(a) compelling the testimony of the Respondent at a deposition to be conducted in accord with this Order. In light of the arduous journey the Plaintiffs have endured, which has included numerous motions, the entry of a default judgement (subsequently affirmed by the First Circuit Court of Appeals), the registration of the default judgement in this District, and since then, multiple attempts to ascertain information about the assets of and debts owed to the Defendants, ultimately bringing the Plaintiffs before this Court almost six years after filing their initial

cause of action, and almost ten years since the events giving rise to their cause of action occurred, I find that it is in the interest of justice to issue the subpoena compelling the testimony of the Respondent in an effort to establish that Orascom is subject to the personal jurisdiction of this Court. Given the apparent intent of the Defendants to evade the Rhode Island District Court's entry of default judgment, and the likelihood that Plaintiffs will never be able to satisfy the default judgment absent information of an elusive and amorphous judgment debtor, there exists a "compelling reason" to issue the subpoena for the testimony of the Respondent for the purposes of establishing the required minimum contacts for valid personal jurisdiction over Orascom. Such information, should it exist, possibly could enable the Plaintiffs to seize the debt Orascom owes to the Defendants and to satisfy the judgment they are owed as a matter of law. The question of whether Orascom is in fact subject to the personal jurisdiction of this Court must be resubmitted to Judge McMahon for her reconsideration, should the Plaintiffs choose to do so, after the deposition of the Respondent is held pursuant to this order.

**D.** *Service of Process of Section 1783 Subpoena Must Be in Compliance with FED. R. CIV.P.4(f)(1)*

■ Respondent is correct to note that the issuance of the § 1783 subpoena must be in accord with the Federal Rules of Civil Procedure.[2] *See* 28 U.S.C. § 1783(b)

---

**2.** Although Respondent argues that the initial Order to Show Cause, issued by The Honorable Laura Taylor Swain, United States District Judge for the Southern District of New York, was not served upon him in conformity with FED. R. CIV. P. 4(f)(1), any challenge Respondent now makes to the propriety of the service of that Order is moot. Respondent is represented by counsel, received notice of the Order, and has been given an opportunity to brief this Court as to why the § 1783 subpoena should not issue. Although service may not have been in compliance with the letter of the law, the spirit of the law—that of due process—has been honored. As described, *infra,* the Plaintiffs must serve the § 1783 subpoena in conformity with FED. R. CIV. P. 4(f)(1).

(directing that service of process of such subpoenas issues under this section be done so in conformity with the Federal Rules of Civil Procedure). Pursuant to FED. CIV. P.R. 4(f)(1), service of process upon an individual outside any judicial district of the United States must be in conformity with an internationally agreed upon means, such as those authorized by the Hague Convention. Considering Respondent currently resides in Egypt, service of process of the § 1783 subpoena must be in compliance with this directive.

Under the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (herein, "Hague Convention"), provided a signatory country does not object, service of process within that country may be effectuated through postal channels.[3] 20 U.S.T. 361. At the signing of the Hague Convention, however, Egypt, along with several other countries, explicitly objected to this provision, thus rendering nugatory service of process via postal channels within Egypt. Accordingly, service of process on Respondent, while residing in Egypt, must be in conformity with Articles 5, 6 or 11 of the Hague Convention. *See Hague Convention*, 20 U.S.T. 361 (permitting service of process by submitting legal documents to a Central Authority of signatory country, and the Central Authority, in turn, arranging service of process on individual located within country in accord with internal law). Unless there is a specific agreement between the United States and Egypt pursuant to Article 11 of the Hague Convention allowing for some other method of service of process—which this Court is unaware of—Plaintiffs must comply with the service of process requirement articulated in Articles 5 and 6 of the Hague Convention.

## CONCLUSION

For the foregoing reasons, the subpoena requested by Plaintiffs pursuant to 28 U.S.C. § 1783 for the testimony of nonparty-respondent Naguib Sawiris is granted and Mr. Sawiris' motion to quash is denied. The subpoena issued pursuant to § 1783 is for the deposition testimony of Mr. Sawiris in his personal capacity, and does not compel Mr. Sawiris to produce corporate documents only in his possession by virtue of his position as Chairman of Orascom. Pursuant to FED R. CIV. P. 4(f)(1), the Plaintiffs must effect service of process on Respondent in Egypt via Articles 5 and 6 of the Hague Convention; service of process cannot be effected through postal channels.

The parties are invited to submit supplemental information to aid this Court in making the required determinations pursuant to 28 U.S.C. § 1783(b) as to the time and place of the deposition of Mr. Sawiris, and the travel and attendance expenses Mr. Sawiris expects to incur in complying with this Order. Accordingly, a commissioner shall be appointed pursuant to FED. R. CIV P. 28(b)(4) to conduct the deposition of Mr. Sawiris in Egypt.

**3.** Though some courts dispute that Article 10(a) allows service of process by mail, *see, e.g., Charas v. Sand Technology Systems Int'l Inc.*, 90 Civ. 5638(JFK), 1992 WL 296406 (S.D.N.Y. Oct. 7, 1992), the Second Circuit has held that Article 10(a) of the Hague Convention permits service of process via postal channels. *Ackermann v. Levine*, 788 F.2d 830, 839 (2d Cir.1986). This Court finds no reason to disagree with the Second Circuit's decision in *Ackermann* or the weight of authority applying *Ackermann* within this Circuit. Additionally, because I direct, *infra*, that service of process of the § 1783 subpoena may not be made via such postal channels, the propriety of whether Article 10(a) applies to service of process is irrelevant for purposes of this order.